177 So.2d 243 (1965)
William Roy PHILLIPS, Appellant,
v.
STATE of Florida, Appellee.
No. G-41.
District Court of Appeal of Florida. First District.
July 8, 1965.
Rehearing Denied August 3, 1965.
Steadman S. Stahl, Jr., Ft. Lauderdale, for appellant.
Earl Faircloth, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee.
STURGIS, Judge.
The appellant, William Roy Phillips, having waived jury trial, was jointly tried with his co-defendant, one Herbert Lane, before the Honorable W. Troy Hall, Jr., Circuit Judge, and adjudged guilty on two informations: one charging them jointly with unlawful possession of moonshine whiskey, and the other with unlawful possession of a still, hence this appeal.
The points of law involved are:
1. Whether the trial court erred in admitting in evidence, over objection, (a) photographs of the still, and (b) items of contraband that were thereupon seized and confiscated.
2. Whether the evidence was sufficient to establish that appellant was in possession of the still and moonshine whiskey, as charged by the informations and essential to conviction.
The testimony reveals that agents of the State Beverage Department, accompanied by a federal agent, having been informed that someone was operating a moonshine still in the vicinity of a rural community known as Blitchton, in Marion County, Florida, but not being informed of the exact location thereof, without the aid of a search warrant made a search of the area. This they did by pairing off and walking across the countryside. Ultimately one of the agents detected the odor of fermenting mash nearby and upon tracing it out, discovered a moonshine still located in an oak hammock 50 to 60 yards behind a dwelling house and attended by a man later identified as Herbert Lane, who was jointly *244 charged and tried for the same offenses as appellant Phillips. Neither the owner nor occupant, who were not known to them at the time, gave the officers permission to go upon the property. Upon being apprehended, Lane informed the officers of appellant's presence in the dwelling house. They went there, found appellant asleep in one of the rooms, wakened him, and brought him to the site of the still. Except as hereinafter indicated, neither appellant nor Lane made any other statements or disclosures to or in the presence of the arresting officers.
One of the agents testified he first smelled the mash when approximately 100 yards from the hammock where the still was located and that he could not see the still until he was approximately 15 yards from the hammock. A Mr. William Gomez testified that he owned and leased to Lane approximately eight acres for hog-raising purposes, on which land the house was located. Appellant Phillips testified that he paid Lane "half of the money towards the lease with an option for a year," which money covered "eight acres of land and the house" where he was arrested. Co-defendant Lane testified that he and Phillips leased the property under an oral arrangement with Gomez for $50.00 per month. This was the extent of the testimony adduced from Phillips and Lane and no other testimony was presented in their behalf.
The court overruled appellant's timely objections to the search resulting in discovery of the still, and to receiving in evidence still apparatus and other contraband seized at the scene and photographs that were taken of the scene. Appellant's brief concedes that if the search was proper, it was lawful to seize the contraband and take the photographs admitted in evidence, but it is contended that the search and seizure was in violation of Section 22, Declaration of Rights, Constitution of Florida, F.S.A., and the Fourth Amendment to the Constitution of the United States. Houston v. State, 113 So.2d 582 (Fla.App. 1959), is cited in support thereof.
In that case this court held the trial court in error for admitting at the trial evidence obtained by search without warrant of Houston's barn which was located in an enclosure with appellant's home and another small building, "all being within the curtilage." Houston's curtilage was not fenced on the side next to a road leading thereto, but there was a fenced field behind the barn and between it and a wooded territory where a still had formerly been found, and it was from the field that the agents gained access to the barn. The facts in the case now on review are clearly distinguishable in that the testimony reveals that the still, other contraband, and moonshine whiskey were located outside the curtilage of the dwelling and appurtenances thereto, which formed only a fractional part of the property leased by appellant and his co-defendant. The noun "curtilage" has a distinctive meaning in legal parlance. It has been described as the yard, courtyard, or piece of ground lying around or near to a dwelling house, included within the same fence. State v. Taylor, 45 Me. 322. It means the yard or court for the protection and security of the mansion house; an enclosure belonging to a dwelling house. State v. Shaw, 31 Me. 523. For a structure or an enclosed parcel of ground which is separate and apart from one's dwelling to be regarded as within the "curtilage," it must be customarily used in connection with a person's dwelling, and it is not brought within the curtilage by the fact that the occupants of the dwelling make use of it on special occasions or in exceptional circumstances. Hubbard v. State, 10 Ala.App. 47, 64 So. 633. Protection of the curtilage against unreasonable searches and seizures should not be so expanded as to make it a refuge for criminals. Worth v. State, 111 Tex.Cr.R. 288, 12 S.W.2d 582. The word denotes only the enclosure surrounding a dwelling house. United States v. Vlahos, D.C.Or., 19 F. Supp. 166. We find nothing in the case on appeal to warrant extending the meaning of the term, in its application to the constitutional prohibition against unreasonable searches and *245 seizures, so as to include the oak hammock on which the subject whiskey still was located, which area and activities thereon are disassociated from any purpose reasonably connected with the conduct of affairs incident to the normal use and occupancy of the dwelling. To extend the concept of immunity from unreasonable search and seizure so as to prohibit the search of any property included in a fenced area in which a dwelling may be located without having first obtained a search warrant, would extend the protection afforded by the constitution to an absurdity.
In Pegueno v. State, 85 So.2d 600 (Fla. 1956), the Florida Supreme Court observed, in the light of United States v. Seiler, D.C. Md., 40 F. Supp. 895, that the odor of fermenting mash emanating from a dwelling house and detected by experienced revenue officers was in itself probable cause for a reasonable belief that the statutes were being violated; and in Lane v. State, 99 So.2d 609 (Fla. 1958), following Pegueno, held in relation to the illicit manufacture of alcohol that the odor of whiskey mash, when detected by experienced officers, was in itself probable cause to suspect that the statutes were being violated. The officer here involved was experienced in the premises.
Police officials operate in an atmosphere of reality rather than under ideally-conceived circumstances. Though technically trespassers, the action of the agents in making the search of the area without benefit of a search warrant and as a result of confidential information received by them was not in any sense reprehensible or illegal. Appellant's first point is without merit.
A careful review of the record fails to sustain appellant's second contention. A witness for the state testified that when appellant was being led from the house to the still site, he and his co-defendant Lane conducted a discussion from which it was evident that they were well acquainted with each other, and that on that occasion Lane, referring to the beverage agents, said, "If * * * [they] had just been a day or so later * * * everything would have been cleared out and gone"; that this statement was made in the presence of appellant and the police officers and appellant made no denial or response thereto. It is the rule in this jurisdiction that when an incriminating statement is made in the presence and hearing of an accused, and such statement is not denied, contradicted or objected to by him, the statement and the fact of his failure to deny any connection therewith may be considered as evidence of his acquiescence in or admission of the facts stated as truth. See: Kemp v. State, 48 So.2d 756 (Fla. 1950); Edwards v. State, 155 Fla. 550, 20 So.2d 916 (1945); Handley v. State, 125 Fla. 632, 170 So. 748 (1936); Autrey v. State, 94 Fla. 229, 114 So. 244 (1927); Roberts v. State, 94 Fla. 149, 113 So. 726 (1927); Mumford v. State, 70 Fla. 424, 70 So. 399 (1915); and Sumpter v. State, 45 Fla. 106, 33 So. 981 (1903). See also: Anno. 80 A.L.R. 1235.
The judgment appealed is
Affirmed.
WIGGINTON, Acting C.J., and CARROLL, DONALD K., J., concur.