**UNITED STATES of America ex rel. Samuel SAIKEN, Petitioner-Appellee,**

v.

**Peter B. BENSINGER and John J. Twomey, Respondents-Appellants.**

No. 76–1408.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 27, 1976.

Decided Dec. 6, 1976.

Rehearing and Rehearing En Banc Denied Dec. 30, 1976.

William J. Scott, Atty. Gen., Jayne A. Carr, Asst. Atty. Gen., Bernard Carey, State's Atty., Chicago, Ill., for respondents-appellants.

John J. O'Toole, Peter Georges, Technical Advisor, Parole and Pardon Bd., Chicago, Ill., for petitioner-appellee.

Before MOORE, Senior Circuit Judge,* and PELL and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

This appeal determines the applicability of *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 to a habeas corpus petition decided by the district court prior to the decision in *Stone* and whether a goosehouse 400 feet from a farm dwelling is

---

* Senior Circuit Judge Leonard P. Moore of the United States Court of Appeals for the Second Circuit is sitting by designation.

within the curtilage protected by the Fourth Amendment.

## I

This case involved a particularly brutal murder of a 17-year old girl who "was a friend" of both a father and his son. The son, Joel Saiken, accused his father of the murder and the father, Samuel Saiken, accused the son. The body was found buried on the father's farm in Indiana after the son told a police officer the specific place where he had buried it following his father's admission to him that he had killed the girl.

A search warrant for the body was issued by an Indiana Justice of the Peace, based upon a police officer's affidavit relating the information given to him by the son. The informant supplied details about the sex and age of the body, its location, and the description and ownership of the farm. Assuming the credibility of the informant, one could readily infer that either the informant was present at the burial or was relating a report which he had reason to believe was based on observation. The body was found by the police, digging at the specified location.

The father was indicted for murder and conspiracy to obstruct justice. A jury returned a verdict of not guilty on the murder charge but found him guilty of conspiring to obstruct justice. He was sentenced to a term of not less than two nor more than three years. The conviction was affirmed by the Illinois Supreme Court in *People v. Saiken,* 49 Ill.2d 504, 275 N.E.2d 381 (1971) and certiorari was denied in 405 U.S. 1066, 92 S.Ct. 1499, 31 L.Ed.2d 796 (1972).

The father-petitioner was granted a writ of habeas corpus releasing him from state custody in *United States ex rel. Saiken v. Elrod,* 350 F.Supp. 1156 (N.D.Ill.1972). This court agreed with the district court that the affidavit for the search warrant was insufficient. *United States ex rel. Saiken v. Bensinger,* 489 F.2d 865 (7th Cir. 1973) (one judge dissenting). The majority concluded that the first prong of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) ("the magistrate must be informed of . . . some of the underlying circumstances from which the informant concluded that the . . . [body] sought was where the informant claimed it was") was satisfied but that the second prong ("some of the underlying circumstances from which the officer concluded that the informant was credible or his information reliable") was not satisfied. However, instead of affirming the district court, this court vacated the granting of the writ and remanded the cause to determine whether the search and seizure occurred beyond the curtilage of petitioner's farm residence and not within the Fourth Amendment's protection, in which case the insufficient credibility of the informant as evidenced by the affidavit would be immaterial. Our judgment in the first appeal was denied certiorari by the Supreme Court in *Felton v. Saiken,* 417 U.S. 910, 94 S.Ct. 2607, 41 L.Ed.2d 214 (1974).

After remand the district court upon a stipulation of facts, found and concluded that the goosehouse near where the body was found, was within the curtilage of petitioner's farm. He thereupon entered summary judgment for the petitioner granting the writ. The respondents have appealed.

## II

■ The district court's decision was entered on August 4, 1975. Almost a year later, on July 6, 1976, the Supreme Court of the United States decided *Stone v. Powell,* in which it held that:

. . . where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

428 U.S. 465, at 494, 96 S.Ct. 3037, at 3052, 49 L.Ed.2d 1067 (footnote omitted).

In this case the State provided an opportunity for full and fair litigation of the Fourth Amendment claim. The Supreme

Court of Illinois devoted most of its opinion to the petitioner's Fourth Amendment claim and concluded that "the search warrant was properly issued upon the affidavit." 49 Ill.2d 504, 275 N.E.2d 381 (1971), *cert. denied,* 405 U.S. 1066, 92 S.Ct. 1499, 31 L.Ed.2d 796 (1972). It should be noted that in *Stone v. Powell* the offender's conviction had been affirmed by the California District Court of Appeal and a petition for habeas corpus relief had been denied by the Supreme Court of California. The offender contended that since he did not seek a writ of certiorari on his direct appeal, "any diminution in . . . [the] ability to obtain habeas corpus relief on the ground evidence obtained in an unconstitutional search or seizure was introduced at . . . [the trial] should be prospective." The Supreme Court said that "[w]e reject these contentions" and the offender was "free to file a timely petition for certiorari prior to seeking federal habeas corpus relief." 428 U.S. at 495, n. 38, 96 S.Ct. at 3052. In the present case, the petitioner did file and had denied a petition for certiorari on his direct appeal prior to seeking federal habeas corpus relief, which makes this a stronger case for the application of *Stone v. Powell* than the facts there.

The petitioner contends nevertheless that *Stone v. Powell* should operate prospectively here. Actually this is not a true question of retroactive application. Recently we said in *United States v. Fitzgerald,* 545 F.2d 578, at 581 (decided November 3, 1976):

> [W]here a change in the law has occurred between the date on which the lower courts ruled and the date on which that ruling was considered by us on direct appeal, . . . a true question of retroactivity [is not involved]. It is well established that when a lower court relies on a legal principle which is changed by a . . . decision prior to direct review, an appellate court must apply the current law rather than the law as it existed at the time the lower court acted.

In *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the Supreme Court applied the exclusionary rule to the states and in that respect overruled *Wolf v. Colorado,* 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949). *Linkletter v. Walker,* 381 U.S. 618, 622, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) recognized a distinction between the application of a change in the law that takes place while a case is on direct review, on the one hand, and its effect on a final judgment[1] under collateral attack, on the other hand. *Linkletter,* dealing with a Fourth Amendment search and seizure problem, did not apply *Mapp* fully retroactively to final judgments, but did apply it to cases pending on direct appeal. Likewise here, *Stone v. Powell,* holding that a state prisoner need not be granted federal habeas corpus relief where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, overruled *Kaufman v. United States,* 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969) to the extent that it held otherwise. As in *Linkletter,* we apply *Stone v. Powell* to the present case which is before us on direct appeal from the granting of the writ of habeas corpus. *Roach v. Paratt,* 541 F.2d 772 (8th Cir. 1976).

There would, of course, be no question whatever of the application of *Stone v. Powell* to this case if this were the first direct appeal. However, the petitioner argues apparently that since this is the second direct appeal after a remand, he has some vested interest in what was decided on the first direct appeal. Although he does not cite it, his position is somewhat supported by *Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) where the Supreme Court referred to "the principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." The only contention which could be

---

1. Final judgment is one where the availability of appeal has been exhausted or has lapsed and the time to petition for certiorari has passed.

*Linkletter v. Walker,* 381 U.S. at 622, n.5, 85 S.Ct. 1731.

raised here is whether there is manifest injustice in applying *Stone v. Powell.*

The mandate after our first appeal ordered that "the judgment granting the writ of habeas corpus . . . be, and the same is hereby, VACATED . . ." and the cause remanded for further proceedings on the curtilage question. In *Board of Supervisors v. Tureaud,* 226 F.2d 714, 717 (5th Cir. 1955), the Court of Appeals noted:

> Of course, the vacating by an appellate court of a judgment is not necessarily the same thing as a complete reversal and remand for a new trial, it being well settled that the latter requires all previous evidence to be reintroduced to have effect. . . . [T]he vacation of the judgment . . . indicates a desire primarily to place the record in such shape that the case may be tried again solely on . . . new criteria. .

Here the new criteria were the facts relating to curtilage. Nonetheless, the granting of the writ was vacated and annulled and we are on this second appeal reviewing the second granting of the writ on August 4, 1975. The situation is no different than on the first direct appeal with the exception that the unreliability of the informant has become the law of the case. If we had to reach that decision on this appeal, we would be bound to find that the informant was unreliable. In the meantime, *Stone v. Powell* was decided, which holds that we need not reach the question of the Fourth Amendment at all. The situation is similar to that in *Hildreth v. Union News Co.,* 315 F.2d 548, 550 (6th Cir. 1963), where the court said:

> We pass without comment so much of plaintiff's argument which challenges the correctness of our previous ruling, with the exception of the reference to a change in the applicable law by the recent decision of the Supreme Court in *Smith v. Evening News Assn.* [371 U.S.

195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962)]. Subject to the effect of that case, if any, our previous ruling is the law of this case and will not be reconsidered on this second appeal.[2]

We apply *Stone v. Powell* and need not decide whether the informant was reliable or not. If the fact that a district court's granting of a writ of habeas corpus is reversed on appeal is considered "manifest injustice" the petitioner's contention would be sound, but we believe that the Supreme Court did not intend that a simple reversal be considered as manifest injustice. Nor did the petitioner ever have a vested interest in the granting of a writ which was vacated on appeal.

### III

■ Nevertheless, assuming without deciding that it would be unjust to apply *Stone v. Powell* here, we proceed to consider the curtilage question. If the body was found outside the curtilage, it is immaterial whether the affidavit supporting the search warrant was sufficient inasmuch as no warrant would be required.

In *Hester v. United States,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), involving a conviction of concealing distilled spirits, the Supreme Court affirmed the refusal to exclude the testimony of revenue officers of their finding moonshine whiskey near the house where the defendant resided even though the witnesses had no search warrant and were trespassers on the land. Mr. Justice Holmes said:

> . . . [T]he special protection accorded by the Fourth Amendment to the people in their "persons, houses, papers, and effects," is not extended to the open fields. The distinction between the latter and the house is as old as the common law.

265 U.S. at 59, 44 S.Ct. at 446 (citation omitted).

2. The denial of certiorari by the Supreme Court in the first appeal here, 417 U.S. 910, 94 S.Ct. 2607, 41 L.Ed.2d 214 (1974) adds nothing to the situation since the denial of certiorari is of no independent importance; the Supreme Court probably denied the writ because of the lack of finality of the first appeal which left the curtilage question open; and we agree in any event that the first appeal established the law of the case.

Relying upon *Hester,* Judge Kiley said in *United States v. Sorce,* 325 F.2d 84, 86 (7th Cir. 1964) that "[t]he agents' entry into an 'open air nursery' was not unlawful" because "[t]he protection of the Fourth Amendment does not extend to 'open fields,' . . . nor to '[e]nclosed or unenclosed grounds . . . around . . . houses,'" citing *Martin v. United States,* 155 F.2d 503, 505 (5th Cir. 1946).

However Fourth Amendment protection *does* extend to the curtilage of the house, which has been defined as "an area of domestic use immediately surrounding a dwelling and usually but not always fenced in with the dwelling." *United States v. LaBerge,* 267 F.Supp. 686, 692 (D.Md.1967).

A fairly well-accepted set of guidelines for ascertaining the curtilage appears in *Care v. United States,* 231 F.2d 22, 25 (10th Cir. 1956):

> Whether the place searched is within the curtilage is to be determined from the facts, including its proximity or annexation to the dwelling, its inclusion within the general enclosure surrounding the dwelling, and its use and enjoyment as an adjunct to the domestic economy of the family (citation omitted).

The following cases outline the distances between the respective house in each case and the outlying building or area considered to be either outside of, or within, the curtilage. The outbuildings or areas include a cave, stills, shed, small concrete building, chickenhouse, hog pen, embankment, barn, smokehouse, small cottage, and a Christmas tree stockpile.

| | Outside Curtilage | Saiken Goosehouse | Within Curtilage |
|---|---|---|---|
| *Care v. United States, supra.* | one long city block | | |
| *United States v. Hassell,* 336 F.2d 684 (6th 1964). | 750 ft. | | |
| *Atwell v. United States,* 414 F.2d 137 (5th 1969). | 750 ft. | | |
| Present case. | | 400 ft. | |
| *Fullbright v. United States,* 392 F.2d 432 (10th 1968). | 150–300 ft. | | |
| *Hester v. United States, supra.* | 150–300 ft. | | |
| *Brock v. United States,* 256 F.2d 55 (5th 1958). | 150–180 ft. | | |
| *Hodges v. United States,* 243 F.2d 281 (5th 1957). | 150 ft. | | |
| *Janney v. United States,* 206 F.2d 601 (4th 1953). | 100 ft. | | |
| *United States v. Minton,* 488 F.2d 37 (4th 1973). | 80–90 ft. | | |
| *Walker v. United States,* 225 F.2d 447 (5th 1955). | | | 210–240 ft. |
| *United States v. Mullin,* 329 F.2d 295 (4th 1964). | | | 75 ft. |
| *United States v. Capps,* 435 F.2d 637 (9th 1970). | | | 40–45 ft. |
| *Wattenburg v. United States,* 388 F.2d 853 (9th 1968). | | | 20–35 ft. |

If the *Walker* case is temporarily removed from consideration, the cases display a perfect symmetry and enunciate a clear rule: any outbuilding or area within 75 feet of the house is within the curtilage and any outbuilding or area further than 75 feet is outside the curtilage. The government in its brief fixes the distance between the Saiken house and goosehouse at "over 380 feet" but the survey stipulated as correct by the parties shows that a direct line between the place next to the goosehouse where the body was located is more than 400 feet from the closest corner of the house. This is more than five times further away than what the appellate courts which have considered distances have deemed to be the maximum distance for a curtilage. The *Walker* case does not fit the pattern of all the other cases but the distance here is over one and one-half times the distance in that case. Therefore, upon the criterion of distance alone, the location of the body here was far beyond the "immediate surroundings" of a house and well outside the curtilage.

The Saiken farm contained about 20 acres, all of which was surrounded by a fence. All residential and agricultural structures were located on the south 5.5 acres and consisted of the house and some 14 outbuildings, including a general barn, a horse barn, a sheep shed, a cattle shelter, a chickenhouse and the goosehouse. The remaining 14.5 acres consisted of thick woods, brush and was low and swampy. This portion was clearly open fields. The goosehouse, next to which the body was found, was the structure furthest from the public road from which access to the farm was gained, being 355 feet from the center line of the road. The area closely surrounding the goosehouse was enclosed with its own fence for the purpose of containing the geese, and obviously not for the privacy of the dwellers in the house. Between the dwelling house and the goosehouse were two portions of the farm driveway, a trailer parking area, a gate and at least one fence.

In *Janney, supra,* the hog pen was separated from the house by one private driveway and one fence. In *Hodges, supra,* the chickenhouse was separated from the dwelling by two fences. In *Brock, supra,* the concrete outbuilding was separated from the residence by one fence and one gate. In all of those cases, the outbuilding was held to be outside of the curtilage.

The Saikens' farm was purchased, maintained and operated as both a weekend and vacation retreat, and for business purposes. The Saikens owned and operated a business, known as Biological Research Products Company, engaged in providing cattle and livestock embryos to colleges, universities and other institutions engaged in embryological research. In *McDowell v. United States,* 383 F.2d 599, 603 (8th Cir. 1967), the court said:

> Although the Supreme Court has recently expanded the Fourth Amendment protection of the business enterprise, *See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), it has not expanded such protection beyond that which a private dwelling and the curtilage thereof is likewise entitled. Therefore, a search of open fields, without a search warrant, even if such fields are construed as part of a commercial enterprise, is not constitutionally "unreasonable."

This quotation was incorporated favorably in our opinion in *United States v. Cain,* 454 F.2d 1285, 1287 (7th Cir. 1972).

We have noted that the district court concluded that the goosehouse was within the curtilage without hearing or seeing any witnesses but rather on a written stipulation of facts, which included a survey of the farm and is included in the record on appeal. We hold that insofar as the district court purported to find facts as to curtilage, he was clearly erroneous, F.R.Civ.P. 52(a), and insofar as he applied law, he reached the wrong legal conclusion.

The judgment granting the petition for writ of habeas corpus is reversed.

REVERSED.