UNITED STATES of America ex rel. Willie B. HENNE, Petitioner-Appellant,

v.

James C. FIKE, Warden, and Allyn R. Sielaff, Director, etc., Respondents-Appellees.

No. 76–2239.

United States Court of Appeals, Seventh Circuit.

Argued April 27, 1977.

Decided Aug. 2, 1977.*

---

* This appeal was originally decided by unreported order on August 2, 1977. See Circuit Rule

35. The Court has subsequently decided to issue the decision as an opinion.

Ralph Ruebner, Deputy State Appellate Defender, Elgin, Ill., for petitioner-appellant.

William J. Scott, Atty. Gen., Timothy B. Newitt, Asst. Atty. Gen., Chicago, Ill., for respondents-appellees.

Before PELL and WOOD, Circuit Judges, and GORDON, District Judge.**

PER CURIAM.

The petitioner-appellant Willie B. Henne appeals the district court's ruling dated September 30, 1976, denying Henne's motion for enlargement and dismissing his petition for a writ of habeas corpus. For the reasons stated below, we affirm.

The petitioner was found guilty in a state court of the crimes of murder and escape after a jury trial. He is currently serving concurrent prison terms, imposed on May 26, 1972, of forty to seventy-five years on the murder conviction and three to nine years on the escape conviction. The convictions were affirmed on appeal by the Illinois Appellate Court, Second District, in *People v. Henne*, 23 Ill.App.3d 567, 319 N.E.2d 596 (1975). The Illinois Supreme Court denied his petition for leave to appeal on March 21, 1975.

Henne subsequently filed a petition for a writ of habeas corpus in the federal district court. In a decision dated January 13, 1976, Judge Prentice H. Marshall denied the respondents' motion for summary judgment. Subsequently, on September 30, 1976, Judge Joel M. Flaum dismissed the petition. The petitioner has appealed from the latter ruling.

During the late evening of September 15, 1971, or early morning of September 16, 1971, Henne was arrested by an Illinois State Trooper for the offense of driving while intoxicated. While in an inebriated state, Henne was informed of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Around the same time, Henne was also given a breath-o-lyzer test to measure the level of alcohol in his blood. The test results revealed that the petitioner's level of intoxication was .17. Under Illinois law, a presumption of intoxication arises on a reading of .10 or more.

A partially empty bottle of brandy and a billfold dropped from inside the car when Henne was stopped on the driving charge. The billfold contained identification materials for both Henne and one Robert Cretney. Later, the state troopers were led to believe that Henne had recently escaped from jail. Accordingly, Detective Bales of the Illinois State Police came to speak with Henne on the morning after Henne's arrest. Bales was told by the state troopers that Henne had previously been informed of his *Miranda* rights.

At first Henne did not respond when Bales identified himself, sought to verify the petitioner's identity, and indicated that

** The Honorable Myron L. Gordon, United States District Judge, is sitting by designation.

he was looking for Cretney, who was then thought missing. Then Henne requested a cigarette and asked in essence whether two other police officers could leave the room. The other officers did leave. Bales then asked if Henne "was the Willie Henne who escaped from the Carroll County jail and if he knew his constitutional rights." Henne responded, "Yeah, those motherfuckers railroaded me."

The petitioner made a number of incriminating statements during further discussion with Bales. Eventually Henne led several officers to Cretney's body, which was located in a corn field. Cretney had been killed by a hatchet wound. The state trial court denied Henne's motion to suppress his statements and the physical evidence obtained therefrom. This determination was affirmed on appeal.

Henne raises the following claims on this appeal: (1) the district court's findings that he was capable of understanding his *Miranda* rights when they were administered are clearly erroneous; (2) the district court's findings that he knowingly and voluntarily waived his *Miranda* rights and that his statements were voluntarily made are clearly erroneous; (3) both the petitioner's statements and certain physical evidence should have been suppressed at his trial, since both were obtained as a result of the assertedly unlawful interrogation; (4) the admission at trial of the petitioner's statements and of the physical evidence was not harmless beyond a reasonable doubt.

## I.  EFFECT OF WAINWRIGHT v. SYKES

After the submission of briefs and oral argument in this case, the United States Supreme Court handed down its decision in *Wainwright v. Sykes*, —— U.S. ——, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). In light of certain factual similarities between *Wainwright* and the instant case, we turn first to a determination of what, if any, effect *Wainwright* may have on Henne's federal habeas corpus application. Even though the district court could not have addressed this question because of the

timing of the *Wainwright* decision, we are obligated to do so.  *United States ex rel. Saiken v. Bensinger*, 546 F.2d 1292, 1293 (7th Cir. 1976), cert. den. —— U.S. ——, 97 S.Ct. 2633, 53 L.Ed.2d 245 (1977).

In *Wainwright*, a state prisoner brought a federal habeas corpus in the district court, asserting that his statement to the effect that he had committed a murder should not have been admitted at his trial because of his lack of understanding of the *Miranda* warnings. There were references at Sykes' trial to his consumption of alcohol and his possible intoxication on the day before the shooting. Sykes did not raise his *Miranda* claim at his state court trial or on the appeal of his conviction for third-degree murder. He subsequently did raise the contention in the state courts through a motion to vacate his conviction; however, this motion was denied by all of the state courts to which it was presented.

The United States Supreme Court found that under Florida law, where Sykes was tried and convicted, Sykes was obligated to raise the challenge to the admissibility of his confession at trial or not at all. *Wainwright*, —— U.S. at ——, 97 S.Ct. 2497. The Court held that review of the *Miranda* issue on federal habeas corpus was barred to Sykes "absent a showing of 'cause' and 'prejudice' attendant to [the] state procedural waiver." —— U.S. at ——, 97 S.Ct. at 2506.

Henne's case involves no such failure to raise in the state trial court the *Miranda* issues presented to the district court and to this court. The record clearly shows that Henne made a timely motion to suppress in the state court and that the trial court held an evidentiary hearing on that motion. Moreover, the Appellate Court of Illinois reviewed and affirmed on the merits the trial court's determination of Henne's suppression motion.

Both Henne and Sykes did raise a *Miranda* issue, relating to their intoxication, in federal court via the petitions for writs of habeas corpus. The significant similarities between the two cases end there. We find that *Wainwright v. Sykes* does not bar

Henne's application to the federal district court for a writ of habeas corpus.

## II. APPLICABILITY OF STONE v. POWELL

■ The footnotes to the parties' briefs on appeal include a debate on the applicability of *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), to the Fifth Amendment claims raised on this appeal. Because this question was not raised or decided in the district court, we must determine initially whether it is now properly before us.

*Stone* was decided between the time the briefs on the habeas corpus application were filed in the district court and the district court's decision of September 30, 1976. Naturally, then, the briefs below did not raise the question of *Stone's* relevance which is presented here. The holding in *Stone* "does not mean that a federal district court lacks jurisdiction over" claims to which it applies. 428 U.S. at 495, n. 37, 96 S.Ct. at 3052. Nonetheless, we feel it is advisable to examine the matter before adverting to the other contentions raised. See *United States ex rel. Saiken v. Bensinger*, 546 F.2d at 1293–5.

In *Stone* the Supreme Court held:

" . . . where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell, supra*, 428 U.S. at 482, 96 S.Ct. at 3046.

It is apparent that the holding in *Stone* was expressly grounded upon Fourth Amendment search and seizure claims and the exclusionary rule. *Stone v. Powell, supra*, at 492, 494, 495 fn. 37, 96 S.Ct. 3037. The exclusionary rule has been a judicially created effort to deter police abuses of the Fourth Amendment's proscription against unreasonable searches and seizures. The Court found that this goal is not well attained when a Fourth Amendment claim previously fully and fairly litigated in state court is presented to the federal court as a habeas corpus claim. In addition, the Court observed that evidence obtained in violation of the Fourth Amendment "is typically reliable and often the most probative information bearing on the guilt or innocence of the defendant." 428 U.S. at 490, 96 S.Ct. at 3050.

Chief Justice Burger noted in his concurrence that the exclusionary rule, which has the effect of removing reliable evidence from consideration at trial, is in this respect unlike the Fifth Amendment's protection against self-incrimination. *Stone v. Powell, supra*, at 496, 96 S.Ct. 3037 (Burger, concurring). In *Brewer v. Williams*, 430 U.S. 387, 413–414, 97 S.Ct. 1232, 51 L.Ed. 2d 424 (1977), Justice Powell observed "[w]hether the rationale of *Stone* should be applied to those Fifth and Sixth Amendment claims or classes of claims that more closely parallel claims under the Fourth Amendment is a question . . . which should be resolved only after the implications of such a ruling have been fully explored."

More recently, in *Wainwright v. Sykes*, —— U.S. at ——, n. 11, 97 S.Ct. at 2506, the Supreme Court declined to determine whether "a bare allegation of a *Miranda* violation . . . is a proper subject for consideration on federal habeas review, where there has been a full and fair opportunity to raise the argument in the state proceeding. See *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)".

The parties' treatment in this court, of the applicability of *Stone* to Fifth Amendment claims makes it appear that this potentially far-reaching issue was raised as an afterthought on this appeal. In view of this consideration and because the Supreme Court has up till now carefully confined the effect of *Stone* to Fourth Amendment search and seizure claims, we decline to apply that holding to the self-incrimination issues raised here.

## III.  UNDERSTANDING OF *MIRANDA* RIGHTS

Before ruling on Henne's capacity to understand his *Miranda* rights, the district court viewed a video tape of the giving of those rights and of the administration of a breath-o-lyzer test to the petitioner. The judge also heard testimony by the petitioner's and the respondent's expert witnesses. The district court thereupon determined that Henne was capable of understanding and comprehending his *Miranda* rights when they were given.

█ In accordance with Rules 52(a), and 81(a)(2), Federal Rules of Civil Procedure, we may set aside the district court's findings of fact in this habeas corpus action only if they are clearly erroneous. *Wilson v. Lash*, 457 F.2d 106, 108 (7th Cir. 1972), cert. denied 409 U.S. 881, 93 S.Ct. 211, 34 L.Ed.2d 136; *United States v. Sain*, 295 F.2d 699, 701 (7th Cir. 1961). See *United States ex rel. Bibbs v. Twomey*, 538 F.2d 151 (7th Cir. 1976).

The petitioner contends that the district court's findings are clearly erroneous in their failure to consider observations about the extent of Henne's intoxication made by the state troopers present when Henne's *Miranda* rights were administered. The petitioner also urges that the district court erroneously failed properly to credit the testimony of the petitioner's expert, Mr. Hall.

█ Judge Flaum's opinion noted that the video tape "speaks adequately as to the petitioner's state of intoxication, but it is silent as to his state of comprehension." This observation is equally pertinent to the state court transcript of the testimony of state troopers who were on the scene when Henne was informed of his rights. The court found on the basis of expert testimony that Henne was capable of comprehending the *Miranda* warnings. We cannot say that the district court's decision to attribute great weight to the testimony of an expert in ruling on the petitioner's state of comprehension was clearly erroneous.

The district court summarized the qualifications of each party's expert witness. The court decided to attribute greater credence to the testimony of Dr. Dubowski, the respondent's expert, because Dr. Dubowski rendered an opinion on the ultimate issue, namely Henne's capacity to understand the *Miranda* warnings. That expert opinion was based on three factors, which the court found helpful in its determination. Moreover, the court discounted other considerations—such as the testimony of the petitioner's expert on Henne's ability to make critical judgments while intoxicated—finding that these matters did not aid in determining whether Henne was capable of understanding his *Miranda* rights. The measure of Henne's intoxication when the rights were given was not specifically the issue. The experts agreed that Henne's level of intoxication could have been in excess of .20 when the *Miranda* warnings were given. Nevertheless, we cannot hold that the findings of fact based on the weight and credibility attributed to Dr. Dubowski's opinions are clearly erroneous.

For these reasons we find the petitioner's first claim to be without merit.

## IV.  WAIVER OF *MIRANDA* RIGHTS

The petitioner levels a multi-pronged attack on the district court's finding that Henne knowingly and voluntarily waived his *Miranda* rights on the morning of September 16, 1971—some nine hours after the warnings were administered—in response to a question from Detective Bales.

It is claimed that an affirmative waiver of rights is required and that Henne's answer to Detective Bales' compound question does not amount to such a waiver.

█ The validity of a waiver of *Miranda* rights is determined on the basis of the totality of the circumstances. *Miranda v. Arizona*, 384 U.S. 436, 475–6, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Poole*, 161 U.S.App.D.C. 289, 495 F.2d 115, 118–9 (1974), cert. den. 422 U.S. 1048, 95 S.Ct. 2667, 45 L.Ed.2d 701 (1975); see also *Greenwald v. Wisconsin*, 390 U.S. 519, 88 S.Ct. 1152, 20 L.Ed.2d 77 (1968). Here, the

district court gave detailed consideration to the circumstances attending the waiver. Recognizing that Henne's response to Detective Bales' two-pronged question could be viewed as ambiguous, the district court made note of other factors indicating that in its view the waiver of rights was voluntary. For instance, the court emphasized that Henne himself "acted affirmatively to minimize the coercive atmosphere" by asking, in effect, whether he and Detective Bales could talk in the absence of two other officers who were in the room. We believe that the court's finding of a voluntary waiver based on the totality of the circumstances is not clearly erroneous.

■ It does not appear that the passage of nine hours between the warnings and the waiver was such a long period as to require that fresh warnings be administered. *Biddy v. Diamond*, 516 F.2d 118, 122–123 (5th Cir. 1975). Nor do we subscribe to the petitioner's view that Detective Bales suspected that Henne murdered Cretney when the questioning began and that therefore Bales was obliged to administer new warnings for a crime other than the one for which Henne was arrested. The petitioner incorrectly relies on *Schenk v. Ellsworth*, 293 F.Supp. 26 (D.Mont.1968), for the proposition that rewarnings must be given each time that an individual is questioned for a different crime. In fact, *Schenk* held that the defendant should have been advised of the single crime of which he was already suspected at the time the *Miranda* warnings were given. The case does not stand for the proposition urged by the petitioner.

In Judge Marshall's view, a "serious question" arose concerning rewarning "in view of the fact that the circumstances of petitioner's detention had changed materially" from the late evening of September 15, 1971, to the following morning. However, no authority has been advanced, and we find none, holding Detective Bales was constitutionally compelled to administer new warnings before questioning Henne even assuming that he then suspected Henne of having murdered Cretney.

Contrary to the petitioner's suggestion, neither *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), nor *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), requires that new warnings be administered in the situation presented here. In *Mosley*, the court set some boundaries for renewed police questioning at a time after an individual had indicated that he does not wish to answer any questions. *Brewer* was expressly denominated a Sixth Amendment right to counsel case, and the petitioner may derive no support from it for the principle he seeks to establish here.

We are also unimpressed with the petitioner's attempts to draw a parallel between the tenor of Bales' questioning in this case and the "Christian burial speech" delivered by the police in *Brewer, supra*, or the unrelenting police confrontation after the defendant indicated a decision to remain silent in *United States ex rel. Doss v. Bensinger*, 463 F.2d 576 (7th Cir. 1972), cert. den. 409 U.S. 932, 93 S.Ct. 239, 34 L.Ed.2d 186. Detective Bales' suggestions that he was looking for a missing man who may have been injured were neither calculated nor coercive as was the behavior of police in *Brewer* and *Doss*.

We conclude that the district court was not clearly erroneous when it found that the petitioner understood his *Miranda* rights and made a voluntary, intelligent waiver of them; accordingly, we do not reach his contentions regarding the suppression of evidence.

For the reasons stated above, the decision of the district court is affirmed.

AFFIRMED.