379 So.2d 1294 (1980)
STATE of Florida, Appellant,
v.
Frank J. BRADY; Philip M. Eckard; Ronald B. Elliot; David A. List; Hermogenes Manuel, Appellees.
STATE of Florida, Appellant,
v.
Hermogenes MANUEL and David List, Appellees.
Nos. 78-2121, 78-2771.
District Court of Appeal of Florida, Fourth District.
January 16, 1980.
Rehearing Denied March 19, 1980.
Jim Smith, Atty. Gen., Tallahassee, and Robert L. Bogen, Asst. Atty. Gen., West Palm Beach, for appellant.
Philip G. Butler, Jr., of Foley, Colton & Butler, P.A., West Palm Beach, for appellee  Brady.
Steven M. Greenberg of Pertnoy & Greenberg, P.A., Miami, for appellees  Elliot and Eckard.
Joel S. Fass of Colodny & Fass, North Miami, for appellee  Manuel.
Alan I. Karten, Miami, for appellee  List.
LETTS, Judge.
Involved is the forced entry by deputies without a search warrant onto 1800 acres of land, fenced, locked, occupied and posted. The trial judge granted the motion to suppress. Also involved is a speedy trial rule discharge because the information alleging attempted possession of cannabis in excess of 100 pounds did not also contain language reflecting intent to sell, manufacture and deliver. We affirm the former and reverse the latter.
The first point considered here revolves around the State's contention that reasonable expectations of privacy do not extend to "open fields" which cannot be considered part of the curtilage regardless of the fact that they may be fenced. See *1295 Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924) and U.S. ex rel. Saiken v. Bensinger, 546 F.2d 1292 (7th Cir.1976). However the term "open fields" does not seem to us to embrace a well fenced, locked and posted property such as exists here. For example, in United States v. Williams, 581 F.2d 451 (5th Cir.1978) the fence was described as a dilapidated hog fence crossed by the agents at a place where it had been walked down almost to the ground. As the Williams court put it "... whatever minor practical significance [the fence] may have retained for the hogs, it has no legal significance for us." (at p. 454). By contrast the deputies in the case at bar could only gain entrance by cutting with bolt cutters the chain lock on a gate.
We have searched for court decisions interpreting the "open fields" doctrine discussed in Hester, supra, and for a clear definition of an open field. The case we like the best is from the Supreme Court of Wisconsin in which the defendant had killed his wife and buried her under a pile of rocks on his 40 acre unfenced farm 450 feet from the farmhouse. Conrad v. State, 63 Wis.2d 616, 218 N.W.2d 252 (1974). The Conrad court discussed the trend away from fourth amendment property rights and focused on the succeeding reasonable expectation of privacy test enunciated in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). However, we agree with the Conrad decision that Katz did not rule out the open fields of Hester altogether. Accordingly, the question of the reasonable right of privacy may well still depend in part on whether the field is truly open or whether it is fenced with the obvious purpose of keeping people out. (See Williams, supra, at p. 453.) As the Conrad court facetiously remarked "... it cannot be doubted that whoever buried [the wife's] body under the rock pile did so. . arguendo in the reasonable expectation of privacy." Notwithstanding, the Conrad court held that because the rock pile was in an unfenced open field 450 feet from the house the evidence revealed by the search was permissible even though it constituted a "clear trespass."
It is conceded that nowhere can we find a clear-cut definition of "open fields," however the recent Fifth Circuit decision in Williams, supra, comes the closest to doing so. In Williams, as already reported, the court was dealing with an almost walked down delapidated hog fence. Yet the case several times infers that a fence would make a difference and we agree it should especially if forced entry is required. For instance on page 454 the Williams court said:
The fence in question here was not a privacy fence or an exclusionary one; in its best days it was meant to do no more than keep the hogs in, not to keep anyone out. In its condition when the agents stepped over it, it offered little, if any, impediment... . In view of these considerations, we think that the fence was not such as to create ... any reasonable expectation of added privacy... .
It is also clear that many of the cases which we have discovered that speak of open fields involve fact situations in which the property is unfenced or marginally fenced.[1] At first blush, one exception to this appears to be Care v. United States, 231 F.2d 22 (10th Cir.1956). However, even in that case the facts never suggest that access through the "hog tight fence" required forced entry.[2] Nowhere have we discovered a case where warrantless searches have been allowed based on a necessary breaking *1296 down of a fence, lock or gate to get on the property, absent exigencies which are not present in the case before us.[3] There was plenty of time to apply for a warrant here. It is claimed the deputies did not think they had probable cause to get one. Lack of probable cause cannot by itself be used to bolster forced entry, quite to the contrary.
We also discuss the number of acres involved here, namely 1800, within the borders of which one defendant lived in a trailer. Should the number of acres affect one's reasonable expectation of privacy? We will not endlessly reiterate the subject matter of the many cases cited in this opinion. Suffice it to say that although the closer one is to the actual curtilage the more sacrosanct the reasonable right to privacy becomes, it is equally plain that the total encirclement of property by a fence obviously designed to keep people out, together with signs telling them to do so, evinces an unmistakable desire and expectation on the part of the occupant that no one enter. From out of the language of the sum of the foregoing cases we chose to interpret the right of privacy as reasonable under the facts of this case.
Finally we discuss and distinguish the Florida case of Norman v. State, 362 So.2d 444 (Fla. 1st DCA 1978). In Norman, as in the case before us, the deputy had no warrant and did not obtain one because he thought he had insufficient probable cause for a search. In Norman, arriving at the locked gate of the farm, the deputy climbed over a fence and walked 250 yards to a tobacco barn. Once there he shone a flashlight through the window to reveal marijuana. The First District held that his actions were a trespass, but not an unreasonable search although the court conceded it might have taken a different view had the farm contained an occupied residence.
In reaching its conclusion the First District ignored the United States Supreme Court's shift to a reasonable right of privacy test[4] and reverted to the Hester, supra, view of fourth amendment property rights around the dwelling house and curtilage, regardless of whether the surrounding fields were fenced. We note the suggestion that Norman might have held otherwise had the farm been occupied and thus distinguish it from the case at bar. Nonetheless even if the case before us had featured an un occupied enclosure, we would have felt compelled to predicate any result, whatever it would have been, on reasonable rights of privacy rather than the right to be secure in property.
On the second point considered, the principal case again is from the First District, this time Aylin v. State, 362 So.2d 435 (Fla. 1st DCA 1978). Aylin did indeed hold as a matter of statutory construction that the Legislature had "subsumed" the new 100 pound provision of Section 893.13(1)(a)(2), Florida Statutes (1977) into the older prohibition under Section 893.13(1)(a). This being so, the Court concluded that the "intent to sell, manufacture [or] deliver" language was necessary to the information. Lacking it, the charge there under consideration was held to be a first degree misdemeanor requiring trial within 90 days.
In the case now before us, we cannot blame the Trial Judge for following Aylin, since we at the Fourth District had not spoken on the subject. However, we disagree with Aylin and are of the opinion that the Legislature must have intended otherwise.
Possession of any amount of cannabis (unless it is a first offense possession of less than 5 grams) is already a third degree felony under Section 893.13(1)(e). This being so, why go to the trouble of enacting a new provision under Section 893.13(1)(a)(2) declaring it to be a second degree felony to possess over 100 pounds, if the Legislature really did not mean to do so and only intended to restate that the possession of in excess of 100 pounds of cannabis remained a third degree felony as it already was in *1297 any event? Such an enactment would be utterly without reason and cannot have been intended.
Under Aylin the result is that possession of 6 grams of cannabis is the same offense as possession of 6 million tons of cannabis, unless the intent to sell, manufacture or deliver language is included in the information, even though the Legislature has enacted a new provision which reads:
"... except that the sale, delivery, or possession of in excess of 100 pounds of cannabis as controlled in s. 893.03(1)(c) shall constitute a felony of the second degree... ."
We readily concede that this newly enacted language has been inserted into the chapter at a confusing and unfortunate place. (In fact, the whole chapter is a mass of confusion). Nevertheless, while we fault the ineptness of the legislation rather than the subsuming analysis of Aylin, we disagree with the First District's version of what the Legislature could possibly have intended.
We therefore hold that the mere possession of in excess of 100 pounds of cannabis is a second degree felony and accordingly, the attempted possession thereof a felony in the third degree and subject to the 180 day speedy trial rule.
We recognize that in view of our affirmance of the motion to suppress, this latter conclusion might be moot. Notwithstanding, it may not, and in any event the point is significant, for our ruling here puts us in direct conflict with the First District.
AFFIRMED IN PART, REVERSED IN PART.
MOORE, J., concurs.
RIVKIND, LEONARD, Associate Judge, concurring in part, dissenting in part.
I agree with the result the Court has reached and concur in its affirmation of the order granting motion to suppress. I respectfully dissent from the portion of the opinion which holds that mere possession of over 100 pounds of cannabis constitutes a second degree felony. I believe that Aylin v. State, 362 So.2d 435 (Fla. 1st DCA 1978) was correctly decided and would follow the decision of our sister court.
NOTES
[1] See for example United States v. Brown, 473 F.2d 952 (5th Cir.1973) [abandoned farm  no signs  no evidence of breaking to enter  broken down chickenwire fence]; Martin v. U.S., 155 F.2d 503 (5th Cir.1946) [unenclosed  no occupancy as a residence  no evidence of break in or signs].
[2] See also U.S. ex rel. Saiken v. Bensinger, 546 F.2d 1292 (7th Cir.1976) [fenced  no evidence of break in. This case is interesting for it does not find an open field to be inconsistent with a fence. It also is primarily concerned with the distance between the residence and the area searched. It catalogues several cases on this subject.]
[3] The one exception, if it be one, appears to be the Norman case infra.
[4] It could not ignore Williams, supra, from the Fifth Circuit in New Orleans which did not issue until a month later.