401 So.2d 858 (1981)
Debra Jayne DeMONTMORENCY, Appellant,
v.
STATE of Florida, Appellee.
No. VV-432.
District Court of Appeal of Florida, First District.
July 10, 1981.
Rehearing Denied August 17, 1981.
*859 Alan S. Ross and Ronald H. Dion of Weiner, Robbins, Tunkey & Ross, Miami, for appellant.
Jim Smith, Atty. Gen., and Miguel Olivella, Jr., Asst. Atty. Gen., for appellee.
LARRY G. SMITH, Judge.
This appeal presents an issue as to the parameters of the "open fields"[1] exception to the warrant requirement of the Fourth Amendment, United States Constitution. The trial judge denied a motion to suppress marijuana found growing on a fenced parcel of land which also included appellant's house trailer. Appellant relies for reversal upon contentions that she is entitled to the protection of the Fourth Amendment in that the area from which the marijuana was seized by trespassing officers was within the curtilage of her dwelling, surrounded by a forty inch hog wire fence topped with two strands of barbed wire, and in any event, the seizure was invalid because there was ample time for the officers to obtain a warrant. Our review convinces us that the trial judge correctly applied the "open fields" exception in denying the motion to suppress, so that the failure to obtain a warrant (assuming, without deciding, that probable cause existed), did not invalidate the seizure. We therefore affirm.
Acting on a tip that marijuana was being grown on appellant's property, two officers drove through an open gate into a pasture adjacent to appellant's property, parked their car, and crossed over a fence into a rough wooded portion of appellant's property. Prior to crossing the fence they did not see the growing marijuana, but it was seen by them after traveling a distance of some 300 feet inside the fence. From the point where the growing marijuana was found the officers could not see appellant's house trailer, which was located within the fenced property approximately 750 to 800 feet distant.[2] After appellant was observed watering *860 the plants she admitted it was her property, and she was arrested. At a point on adjoining property other than the place where the two officers crossed the fence it was possible to observe the growing marijuana plants from outside the fenced area. However, the officer who made this observation testified that the marijuana would not have been seen from this vantage point had not the two officers already located the marijuana on the property.
Initially we accept appellant's contention that law enforcement officers trespassing[3] in a constitutionally protected area cannot, absent some exception to the warrant requirement, justify the seizure of contraband on the ground that it is in "plain view." State v. Morsman, 394 So.2d 408 (Fla. 1981); and see Ensor v. State, 403 So.2d 349 (Fla. 1981). We further accept appellant's contention that she is entitled to the protection of the Fourth Amendment to the extent of the curtilage of her dwelling. State v. Morsman, supra; State v. Parker, 399 So.2d 24 (Fla. 3rd DCA 1981). These cases and the authorities upon which they rely seem without question to extend the legitimate expectation of privacy[4] to the home and the surrounding area coming within the definition of "curtilage." Hester v. United States, supra, clearly distinguishes "open fields" from the home and its curtilage:
[T]he special protection accorded by the Fourth Amendment to the people in their "persons, houses, papers and effects," is not extended to the open fields. The distinction between the latter and the house is as old as the common law. (Emphasis supplied)
It has been said that expectations of privacy are "inherent" in the common law concept of "curtilage." United States v. Van Dyke, 643 F.2d 992 (4th Cir.1980). See United States ex rel. Saiken v. Bensinger, 546 F.2d 1292, 1296 (7th Cir.1976), cert. den. 431 U.S. 930, 97 S.Ct. 2633, 53 L.Ed.2d 245 (1977); and see also, Giddens v. State, 156 Ga. App. 258, 274 S.E.2d 595, 596 (1980), recognizing an expectation of privacy arising under "the traditional rules applied to one's dwelling or surrounding curtilage."
If the search and seizure occurred within appellant's curtilage, then it is clear that the trial judge erred in failing to suppress the evidence. If not within the curtilage, then we must determine whether the trial judge correctly applied the "open fields" exception to the warrant requirement, particularly in light of the more recent standards concerning claimed Fourth Amendment violations, under which we are required to focus less upon property concepts, and increasingly upon whether there is a legitimate expectation of privacy in the invaded area. Katz v. United States, supra (footnote 4); United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). The two-step test of legitimacy, as recently reiterated in Norman v. State, 379 So.2d 643, 647 (Fla. 1980), is stated as follows:

*861 That expectation [of privacy] will be recognized as legitimate if a person has exhibited an actual (subjective) expectation of privacy, and the expectation is one that society is prepared to recognize as reasonable.
Thus, while we find courts expressly acknowledging the continued viability of the "open fields" doctrine as an exception to the Fourth Amendment's warrant requirement, State v. Brady, 379 So.2d 1294, 1296 (Fla. 4th DCA 1980),[*]Giddens v. State, supra, 274 S.E.2d at 597, application of the doctrine, especially in the case of enclosed property, presents some difficulty.[5]
This court's decision in Phillips v. State, 177 So.2d 243 (Fla. 1st DCA 1965), although a pre-Katz decision, furnishes rather strong support for the trial judge's decision in this case that the search of appellant's land was not unlawful. Phillips held that a whiskey still located in an oak hammock 50 to 60 yards behind a dwelling was not within the curtilage, although the house and the still were on a parcel of some eight acres leased to the defendant for hog-raising purposes. In that case the court undertook to define the term "curtilage" as follows (Id. at 224):
It has been described as the yard, courtyard, or piece of ground lying around or near to a dwelling house, included within the same fence... . It means the yard or court for the protection and security of the mansion house; an enclosure belonging to a dwelling house... . For a structure or an enclosed parcel of ground which is separate and apart from one's dwelling to be regarded as the "curtilage," it must be customarily used in connection with a person's dwelling, and it is not brought within the curtilage by the fact that the occupants of the dwelling make use of it on special occasions or in exceptional circumstances... . (citations omitted)
In Phillips, the court reasoned that the whiskey still was "disassociated from any purpose reasonably connected with the conduct of affairs incident to the normal use and occupancy of the dwelling," (Id. at 245), and was therefore not within the curtilage. Later cases refer to the protected area as that portion of the premises "used in connection with a dwelling," Antone v. State, 382 So.2d 1205 (Fla. 1980), or a part of the "area surrounding and related to the dwelling," State v. Parker, supra.
Although the court decided in Norman v. State, supra, that the "open fields" exception of Hester v. United States, does not extend to "a warrantless search of a closed structure on fenced property" (379 So.2d at 647), we do not read in the opinion an absolute prohibition against warrantless searches and seizures on enclosed land. Furthermore, Norman v. State is clearly distinguishable from the case before us in that entry in that case was accomplished by a sheriff who climbed a fence, after he found the gate locked, and observed marijuana inside a tobacco barn by peering through the window with the aid of a flashlight. There is no evidence in the present case of a gate, locked or otherwise, except for a gate located in front of the house trailer itself, and the marijuana in question was growing in a cleared patch of ground within a wooded area, not concealed in a closed building.
State v. Brady, 379 So.2d 1294 (Fla. 4th DCA 1980), obviously represents a rather firm view that enclosed occupied (perhaps even unoccupied) land cannot lawfully be subjected to search by trespassing officers. In Brady, entry was made by officers without a warrant onto 1,800 acres of land which was well fenced, locked and posted property, upon a portion of which the defendant lived in a trailer. Also, the Brady opinion points out that the deputies gained entrance to the property by cutting with bolt cutters the chain lock on a gate. The opinion furnishes no further details as to proximity of the point of entry to the dwelling itself, nor is there further description of *862 the nature of the fenced area or surrounding property. The locked gate, the fact that the property was posted, and the forced entry are facts which tend to distinguish Brady from the case now before us. Further, the Brady opinion questioned this court's decision in Norman v. State, 362 So.2d 444 (Fla. 1st DCA 1978)[6], because of its reliance upon the concept of property rights surrounding the dwelling house and curtilage, rather than the reasonable expectation of privacy test enunciated by the United States Supreme Court in recent decisions. Although the Fourth District was prophetic in sensing the demise of our Norman v. State decision, it appears to us that the Supreme Court of Florida's decision quashing (Norman v. State, 379 So.2d 643 (Fla. 1980)) was based primarily upon the warrantless entry of the closed barn [not an "open field"] within which the contraband was concealed, rather than the mere fact that the property itself was enclosed by a fence, although the court also noticed the fact that entry was made by climbing the fence after the sheriff found the gate locked.
Cases from the federal courts indicate that the open fields doctrine may be applicable to fenced as well as unfenced property. Martin v. United States, 155 F.2d 503 (5th Cir.1946); United States v. Diaz-Segovia, 457 F. Supp. 260 (D.C.Md. 1978); United States ex rel. Saiken v. Bensinger,[7] supra; Fullbright v. United States, 392 F.2d 432 (10th Cir.1968), cert. den. 393 U.S. 830, 89 S.Ct. 97, 21 L.Ed.2d 101 (1968); United States v. Greenhead, Inc., 256 F. Supp. 890 (N.D.Cal. 1966); Monnette v. United States, supra (footnote 3). See, however, United States v. Van Dyke, 643 F.2d 992 (4th Cir.1981),[8] in which the court observed that the government cited no cases in which a building or area within an exclusionary fence surrounding a residence was found to be outside the curtilage, and further stated (Id. at 994):
Assuming that sheer distance could in some instances lead us to conclude that a particular area was outside the curtilage even though inside a fence surrounding a residence, this case does not present such a situation.
Giddens v. State, 156 Ga. App. 258, 274 S.E.2d 595 (1980), cert. denied Giddens v. Georgia, ___ U.S. ___, 101 S.Ct. 1733, 68 L.Ed.2d 222 (1981), on facts very similar to those in Norman v. State, supra, reached the opposite result. The facts in Giddens were that officers crossed a wire fence (four strands of barbed wire) onto a field upon which was a storage building containing marijuana. The officers also found marijuana growing amidst corn in the field. A gate to the field was locked, but this fact was unknown by the officers. The court held that the open fields doctrine survived Katz v. United States, supra, and concluded that any "expectation of privacy" the defendant had in regard to the field was not reasonable under the circumstances.[9] See also United States v. Diaz-Segovia, supra.
Our conclusion from our examination of the cases is that it is by no means absolutely clear to what extent the open fields doctrine may be applied where property is fenced, particularly where the fence *863 encloses a residence. However, it is clear, in our opinion, that the growing marijuana in this case was not located in an area falling with the "curtilage" as traditionally defined for the reason that the marijuana was "disassociated from any purpose reasonably connected with the conduct of affairs incident to the normal use and occupancy of the dwelling." (Phillips v. State, supra, 177 So.2d at 245). And furthermore, although the presence of a fence manifests an actual (subjective) expectation of privacy to a degree,[10] the growing marijuana was in fact visible from adjoining property, was located in a wooded area, and was separated from the dwelling by a distance equal to more than two football fields. Appellant's expectation of privacy, under these circumstances, is not one that we would expect society is prepared to recognize as reasonable. As stated by this court in Phillips v. State, supra (177 So.2d at 245):
To extend the concept of immunity from unreasonable search and seizure so as to prohibit the search of any property included in a fenced area in which a dwelling may be located without having first obtained a search warrant, would extend the protection afforded by the Constitution to an absurdity.[11]
Accordingly, the judgment and sentence appealed are AFFIRMED.
McCORD, J., and LILES, WOODIE A., Associate Judge (Ret.), concur.
NOTES
[1] Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924).
[2] Testimony of the officers given at the suppression hearing reveals that the house trailer itself was protected by three dogs, whose presence made it necessary for the officers to solicit the assistance of appellant in restraining the dogs when the officers later returned to search the trailer (pursuant to a search warrant which the trial court found invalid). Presumably these dogs were within some type of enclosure in the yard, but the testimony does not permit us to determine whether there was a second fence enclosing the trailer and its yard, or whether a single enclosure surrounded the entire property, including the marijuana patch. It would be helpful, particularly in proceedings where constitutional issues are being determined, if both counsel and the trial judge would see that the facts are developed to the extent necessary to enable a reviewing court to understand them. We must also observe that neither appellant nor appellee have bothered to favor this court with the exhibits introduced at the suppression hearing, and they have not been referred to in the briefs.
[3] The issue of Fourth Amendment violation is not determined, however, solely by the mere fact that the officers were or were not trespassing upon the property where the seizure occurred. Hester v. United States, supra (footnote 1); Cobb v. State, 213 So.2d 492 (Fla. 2nd DCA 1968); State v. Belcher, 317 So.2d 842 (Fla. 2nd DCA 1975); Monnette v. United States, 299 F.2d 847 (5th Cir.1962).
[4] Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Norman v. State, 379 So.2d 643 (Fla. 1980).
[*] Proceeding for review pending in Supreme Court of Florida, Case No. 59054.
[5] Cf. Norman v. State, supra, 379 So.2d at 647: "Whatever the precise parameters of this long-standing but seldom-used doctrine ..." (referring to the "open fields" doctrine).
[6] Decision quashed, Norman v. State, 379 So.2d 643 (Fla. 1980).
[7] The Bensinger opinion contains a collection of federal cases and a table showing the distances from the house and the search area or building in each case. The "Outside Curtilage" distances range from 80 to 750 feet; the "Within Curtilage" distances range from 20 to 240 feet.
[8] Van Dyke rejects the analysis of Bensinger in so far as Bensinger relies upon distance as the criteria for determining whether the curtilage has been invaded. However, Van Dyke approved the ultimate decision by the Bensinger court based upon other facts, namely, that between the goose house where the body was found and the dwelling were another fence, a farm road, and a parking area.
[9] The Giddens court observed (274 S.E.2d at 597): "The wire fence of a type commonly used to restrict movement of livestock posed little obstacle to the entrance of law enforcement officers who were only later aware that the gate to the field was locked. The officers received no notice prior to their entry that the owner or rightful occupant forbade such entry" (citing Georgia Code provisions).
[10] One witness characterizes the fence here as "So called fence, it wasn't all that good, but a fence ...;" and as to parts, "Fairly good fence, it wouldn't hold a hog."
[11] This quotation implies that the opinion of the court applies to property protected by a fence. Unfortunately, however, the court's opinion does not contain the factual details relative to any fences located upon the defendant's property.