**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Donald William SETTEGAST and Thomas Gary Greer, Defendants-Appellants.**

No. 84–2346.

United States Court of Appeals,
Fifth Circuit.

March 8, 1985.

ment for these defendants and plaintiff took no appeal as to them.

Don Ervin, Houston, Tex., for defendant-appellant D.W. Settegast.

Dan Gerson, Houston, Tex., (Court appointed), for defendant-appellant T.G. Greer.

Daniel K. Hedges, U.S. Atty., Susan L. Yarbrough, James R. Gough, Cedric L. Joubert, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before WISDOM, WILLIAMS, and HILL, Circuit Judges.

WISDOM, Circuit Judge:

This direct criminal appeal from convictions entered after denials of motions to suppress evidence and subsequent pleas of guilty presents the question whether the warrant authorizing the search of a residence at 1611 Vassar Street in Houston, Texas, was supported by probable cause. We conclude that the affidavit supporting the search warrant contained a sufficient basis for the magistrate's conclusion that probable cause existed. Because we find no error in the trial court's denial of the motions to suppress, we affirm the convictions of both defendants.

I.

By a two-count indictment filed January 28, 1984, the defendants, Donald William Settegast and Thomas Gary Greer, were charged with conspiring to manufacture and attempting to manufacture phenylacetone, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (1982). The defendants were arrested following a search of a residence at 1611 Vassar Street in Houston, Texas, in which Drug Enforcement Agency (DEA) agents found drug-manufacturing equipment and other illegal contraband. Defendant Greer was arrested as he entered the premises during the search; defendant Settegast, who resided in the premises, was arrested several months later near the Idaho-Oregon border.

Both defendants filed motions to suppress the evidence seized in the search, contending that the affidavit accompanying the application for the search warrant did not contain sufficient facts to support the magistrate's determination of probable cause. The district court denied both motions, without a hearing and without assigning written reasons. The defendants then entered conditional pleas of guilty to count one of the indictment pursuant to Fed.Rule Crim.P. 11(a)(2);[1] count two was dismissed on the government's motion. The district court accepted the conditional guilty pleas on count one, the conspiracy count, and sentenced each defendant to five years imprisonment. Both defendants appealed.

II.

The single issue preserved for appeal is whether the search warrant authorizing the search of the residence at 1611 Vassar Street was supported by probable cause.[2] The warrant was issued upon

**1.** Fed.R.Crim.P. 11(a)(2) provides:
"(2) Conditional Pleas. With the approval of the court and the consent of the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. If the defendant prevails on appeal, he shall be allowed to withdraw his plea."
The defendant Settegast filed a "Motion to Preserve Error" which expressly states that his guilty plea is conditional, as provided for in Rule 11(a)(2), and preserves as error the question of the validity of the search warrant and the admission into evidence of the fruits of the search. Although defendant Greer did not file

such a motion, he did file a motion, which was granted by the district court, to adopt the motions filed by Settegast. The district court recognized and accepted the conditional guilty pleas of both defendants. Both defendants, therefore, properly preserved the issue of the validity of the warrant for appeal. Because we approve the finding that the warrant was issued on probable cause, the defendants may not withdraw their guilty pleas, and the convictions must be upheld.

**2.** Because the government raised no issue of standing below, the appellate court need not consider the issue and may "assume, as all parties did in the trial court, that [the defendants] had sufficient standing". *United States v. Men-*

DEA special agent John Sanchez's submission of an affidavit setting forth the facts he believed to support a finding of probable cause.[3] The affidavit states that a laboratory glassware company in Tennessee received two separate orders for numerous pieces of glassware from a person identifying himself as Harold Cox and purporting to represent a company named H. Cox & Son. When placing the first order, the purchaser, who stated that he was working at St. Thomas University in Houston, gave a company address of 7778 Old Katy Road, Houston, Texas. On placing the second order, the purchaser gave an address of 1430 Campbell Road, Suite 209, Houston. The glass distributor received two cashier's checks from H. Cox & Son as payment for the two orders.

Sanchez further states in the affidavit that he personally checked Houston business indices, telephone company records, and other commercial listings and found no listing for H. Cox & Son. The Old Katy Road address given by the purchaser was nonexistent; the Campbell Road address was that of a Houston area answering service. Further investigation also revealed that no one named Harold Cox was employed by St. Thomas University in Houston. This information led Sanchez to believe that H. Cox & Son was a fictitious company.

Sanchez states that he then conferred with other DEA agents and determined that the equipment ordered by "Cox" was that commonly used in illegal drug manufacturing operations. The DEA then obtained a court order authorizing the agency to install electronic tracking devices in two heating mantles which "Cox" had ordered from the glassware manufacturer. The affidavit recites that these mantles were picked up at the Federal Express Office in Houston and traced to the 1611 Vassar Street residence. A utilities company check showed the name of the subscriber at that location as Bill Settegast. A check of Settegast's criminal history revealed that he had two previous arrests for narcotics violations, the first for conspiracy to manufacture a controlled substance and the second for distribution of a controlled substance.

■ The affidavit also recites that Houston law enforcement officials received two tips, which aided in the DEA investigation, from a "confidential source". The first tip confirmed that the Bill Settegast listed in the utility company records for 1611 Vassar Street was Donald William Settegast. The second tip was that Thomas Gary Greer, Donald William Settegast, and several other individuals were setting up a clandestine methamphetamine laboratory. The affidavit contains no reference to the reliability of the confidential informant. The remainder of the affidavit covers continued surveillance of the premises, the results of which are inconclusive as to the probable cause determination.[4]

On appeal, the defendants argue that the affidavit did not establish probable cause for the search at 1611 Vassar. They contend that the affidavit contains only bald assertions and conclusions unsupported by underlying facts and that the affiant failed to establish the reliability of the confidential informant from whom the tips were received. The government asserts that the affidavit was based on the direct knowledge and observations of the affiant and that the factual assertions contained in the affidavit were sufficient to meet the "total-

---

*doza,* 5 Cir.1983, 722 F.2d 96, 97 n. 1; *United States v. Sanchez,* 5 Cir.1982, 689 F.2d 508, 509 n. 1.

**3.** The full text of the affidavit appears at Appendix A to this opinion.

**4.** The notarial seal on the affidavit shows that it was sworn and signed on November 21, 1983; however, the affidavit covers events running through December 20, 1983. The warrant was served on December 23, 1983. It is likely, therefore, that the November 21 date is incorrect and that the affidavit was actually sworn and signed on December 21, 1983. This discrepancy appears to be "a minor inaccurac[y] rather than [a] distortion ... of material fact", *United States v. $64,000.00 in U.S. Currency,* 5 Cir.1984, 722 F.2d 239, 246, and does not invalidate the warrant.

ity of the circumstances" test of *Illinois v. Gates,* 1983, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, *rehearing denied,* — U.S. ——, 104 S.Ct. 33, 77 L.Ed.2d 1453, even if the information received from the confidential informant were excised from the affidavit. We agree.

▮ In *Illinois v. Gates,* the Supreme Court rejected a rigid test for determination of probable cause and reaffirmed the court's earlier "totality of the circumstances" analysis for probable cause determinations, as follows:

> "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existea."

*Id.,* 462 U.S. at 238, 103 S.Ct. at 2332 (citations omitted). The affidavit supporting an application for a search warrant must provide the magistrate "sufficient information ... to allow that official to determine probable cause"; a wholly conclusory statement unsubstantiated by underlying facts is not sufficient to support a determination of probable cause. *Id.* at 239, 103 S.Ct. at 2333. The magistrate may, however, draw reasonable inferences from the material supplied to him, and the "magistrate's determination of probable cause should be paid great deference by reviewing courts". *Id.* at 236, 103 S.Ct. at 2331, *quoting Spinelli v. United States,* 1969, 393 U.S. 410, 419, 89 S.Ct. 584, 591, 21 L.Ed.2d 637. In doubtful or marginal cases, resolution of the question whether probable cause exists "should be largely determined by the preference to be accord-

ed to warrants". *Gates,* 462 U.S. at 237 n. 10, 103 S.Ct. at 2331 n. 10.

The Fifth Circuit has set forth the role of magistrate and judge in making a probable cause determination as follows:

> "The standard for determining whether probable cause exists to issue a search warrant is if 'the magistrate was provided with sufficient reliable information from which he could reasonably conclude that the items sought in the warrant were probably at the location sought to be searched.' *United States v. Morris,* 647 F.2d 568 (5th Cir.1981). In reviewing the district court's conclusion that the affidavit established probable cause, 'our review is not limited to the "clearly erroneous" standard, and we instead may make an independent review of the sufficiency of the affidavit.' *United States v. Freeman,* 685 F.2d 942, 948 (5th Cir. 1982). The magistrate's determination that probable cause was shown by the affidavit is, however, entitled to great deference."

*United States v. Phillips,* 1984, 727 F.2d 392, 394 (citations omitted).

▮ The affidavit in the instant case meets the requirements set forth in *Gates* and *Phillips.* The defendants' arguments that the affiant's assertions are nothing more than "wholly conclusory" statements and that the unsubstantiated informant's tips did not provide the magistrate a substantial basis for determining the existence of probable cause are not borne out by an examination of the affidavit itself. It is true, as the defendants assert, that the affidavit does not provide the magistrate sufficient information to judge the credibility of the confidential informant who provided the tips disclosed in the affidavit.[5] This failure does not compel a conclusion that the warrant was invalid, but does serve to rebut the presumption of validity

---

5. The tips furnished "nothing more than a conclusion that the defendant[s] had engaged in criminal conduct". *United States v. Kolodziej,* 5 Cir.1983, 712 F.2d 975, 977. They wholly lack evidence either of the basis of the informant's knowledge or of the reliability of the informants

and, therefore, fall far short of the basis required by *Gates.* The tips must, therefore, be excised from the warrant, and the remaining allegations must stand alone to support the probable cause determination. *Id.*

to which a magistrate's determination of probable cause is typically entitled. *See United States v. Kolodziej*, 5 Cir.1983, 712 F.2d 975, 977. In the instant case, however, the tips set forth in the affidavit were not essential to the probable cause determination; even after the tips are excised from the affidavit, it contains sufficient facts, based upon agent Sanchez's independent investigation, to support the issuance of the search warrant.

■ The affidavit establishes that several items of laboratory glassware commonly used for illegal drug-manufacturing operations were ordered by a man using a fictitious name and misrepresenting his occupational status. This equipment was delivered to 1611 Vassar Street, the location for which the search warrant was issued. The person in whose name the utilities for that residence were listed had two previous convictions for illegal drug manufacturing and distribution activities. These facts, established by Sanchez's independent investigation, provided the magistrate sufficient reliable information from which he could reasonably conclude that contraband would be found at the Vassar Street address, and were sufficient to cure the inadequacies of the unsubstantiated tips. *See, e.g., Aguilar v. Texas*, 1964, 378 U.S. 108, 109 n. 1, 84 S.Ct. 1509, 1511 n. 1, 12 L.Ed.2d 723. The magistrate's finding should not, therefore, be overturned on appeal.[6]

### III.

■ The district court correctly denied the defendants' motions to suppress the evidence seized in the search of the premises at 1611 Vassar Street. The affidavit supporting the application for the search warrant contained statements, based on the affiant's independent investigation and personal knowledge, which provided a sufficient basis for the magistrate's finding of probable cause. Although this court does not "recommend or endorse omissions in affidavits of the informant's credibility or reliability", *Phillips*, 727 F.2d at 399, the affidavit in the instant case provides probable cause to believe that contraband will be found at the subject address, even when all unsubstantiated tips are excised from it. The warrant therefore survives the "totality of circumstances" test set forth in *Gates.* Accordingly, we AFFIRM the convictions of both defendants.

### APPENDIX A

### AFFIDAVIT

MAGISTRATE DOCKET # H–83–458M

Special Agent John Sanchez, Jr., being duly sworn states that: I, John Sanchez, Jr., am a Special Agent with the Department of Justice, Drug Enforcement Administration and commissioned to enforce the Comprehensive Drug Abuse Prevention and Controlled Substances Act of 1970. I have reason to believe that Harold COX, Donald William SETTEGAST AKA Bill SETTEGAST and others not yet identified to me have unlawfully entered into, confederated, conspired, and agreed to acts which are in violation of the said Act, to wit: The unlawful manufacture of a controlled substance in violation of 21 USC 841(a)(1) and 21 USC 846.

I believe the alleged conspiracy exists because of the following facts:

---

**6.** In the circumstances of this case, the defendants' conviction should be upheld even were we to determine that the search warrant was invalid. The warrant application was supported by more than a "bare bones" affidavit containing wholly conclusory statements. There is no allegation that the issuing magistrate was partial or biased. Further, the DEA agents' reliance on the magistrate's probable cause determination was objectively reasonable. "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression [of evidence] is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 1984, 468 U.S. ——, ————, 104 S.Ct. 3405, 3422–3423, 82 L.Ed.2d 677, 700–701, *rehearing denied*, —— U.S. ——, 105 S.Ct. 52, 82 L.Ed.2d 942. "The extreme sanction of exclusion", *id.*, is, therefore, inappropriate in this case even had the warrant not been supported by probable cause.

On May 16, 1983, a person identifying himself as Harold COX and alleging he represented H. COX & SON of 7778 Katy Road, Houston, Texas 77055, ordered from Lab Glass Inc., P.O. Box 5067, Fort Henry Drive, Kingsport, Tennessee 37663, the following pieces of laboratory glassware:

Bushing adapter
two (2) 500 milliter flasks
two (2) 1 liter flasks
two (2) 2 liter flasks
two (2) 3 liter flasks
one (1) 5 liter flask
two (2) 12 liter flasks
one (1) funnel

At the time the order was placed, Harold COX alleged that he was working at St. Thomas University in Houston, Texas. The laboratory glassware was shipped via United Parcel Service Air, C.O.D. to Houston, Texas where it was picked up at the Will Call Window by an unidentified individual.

On September 14, 1983, Lab Glass, Inc. of Kingsport, Tennessee received an order from HAROLD COX & SON now listing an address of 1438 Campbell Road, Suite 209, Houston, Texas 70055, telephone number (713) 984–9881 for a large quantity of sophisticated laboratory glassware, including the following:

one (1) 5 liter, 2-neck reaction flask with heating mantle
one (1) 12 liter, 2-neck reaction flask with heating mantle
two (2) 50 liter, 3-neck reaction flasks with heating mantles
one (1) 4 liter filter flask

The Lab Glass, Inc. subsequently received two cashiers checks from H. COX & SON drawn on the Long Point National Bank of Houston, Texas totalling $4,676.69 as payment for the order.

Your affiant in investigating Harold COX of H. COX & SON, 7778 Old Katy Road determined that there is no commercial listing in the Houston Business Indicies [sic] for H. COX & SON. Your affiant also determined that the address of 7778 Old Katy Road is non-existent.

Your affiant contacted the University of St. Thomas and determined that during the last year and a half there has been no Harold COX employed there in any capacity.

Your affiant in investigating the second order made by HAROLD COX & SON has determined that 1438 Campbell Road, Suite 209 is listed to Personality Plus Answering Service of Houston, Texas. The telephone number (713) 984–9881 according to the Southwestern Bell Telephone Company of Houston, Texas is listed to Personality Plus Answering Service, 1438 Campbell Road, Suite 209, Houston, Texas. The telephone company's records do not list HAROLD COX & SON as an alternate subscriber to (713) 984–9881, nor do they have a business listing for H. COX & SON..

Your affiant has checked with the Dunn [sic] & Brad Street Business Indicies [sic] and has determined they have no listing for HAROLD COX & SON in Houston, Texas. Your affiant has checked with the Houston Credit Bureau for a Harold COX and HAROLD COX & SON and determined they have no listing for either.

Your affiant having conferred with other special agents of the Houston Clandestine Laboratory Group and Drug Enforcement Administration Chemist Dan Prall of the South Central Regional Laboratory has been advised that the type and sizes of the laboratory glassware ordered by HAROLD COX & SON is consistent with that found in illegal drug manufacturing laboratories.

Based upon my investigation, I believe that HAROLD COX & SON is a fictitious company established for the purpose of obtaining laboratory equipment for an illegal drug manufacturing operation.

At approximately 7:40 PM on Friday, November 18, 1983, the two (2) fifty (50) liter heating mantles with the electronic tracking devices installed were picked up at the Federal Express Office at 3675 East T.C. Jester, Houston, Texas. The two (2), fifty (50) liter heating mantles with the electronic tracking devices were followed to 1611 Vassar, Houston, Texas where they were

taken into the residence. A utilities check for 1611 Vassar, Houston, Texas showed the subscriber to be Bill SETTEGAST.

Police Officer Chris Lott from the South Houston Police Department has received information from a confidential source confirming that the Bill SETTEGAST listed in the utilities check is Donald William SETTEGAST to have two (2) previous arrests for narcotic violations, one (1) arrest for conspiracy to manufacture a controlled substance, and one (1) arrest for distribution of a controlled substance.

SETTEGAST was subsequently convicted on both charges and sentenced to a jail term. SETTEGAST is currently on federal parole supervision as a result of one of these convictions. Police Officer Chris Lott has also supplied information that he received from a confidential source that Thomas Gary Greer, Eva Mae Riti, Sherry Steed and John Paul Steele are assisting Donald William SETTEGAST in setting up a clandestine methamphetamine laboratory.

Thomas Gary Greer and Eva Mae Riti are previously convicted federal narcotics violators, for manufacturing of methamphetamine. John Paul Steele also has a prior federal conviction.

On November 10, 1983 I received authorization from US Magistrate Raymond J. McQuary to use two (2) electronic tracking devices located inside the two (2), fifty (50) liter heating mantles in order to determine the location of the clandestine laboratory.

Periodic surveillances were maintained at 1611 Vassar Houston, Texas in order to monitor the tracking devices and the activity at 1611 Vassar, Houston, Texas.

It should be noted that on December 9, 1983 an extension was obtained from Judge H. Lingo Platter for the continued use of the electronic tracking devices.

On Sunday, December 18, 1983 your affiant conducted a surveillance of 1611 Vassar, Houston, Texas and monitored the two (2) electronic tracking devices.

On Monday December 19, 1983 your affiant again conducted surveillance at 1611 Vassar, Houston, Texas and determines that only one (1) of the electronic tracking devices was emitting a signal from 1611 Vassar, Houston, Texas. On [sic] attempt was made to locate the signal from the second tracking device without success. On Tuesday, December 20, 1983 your affiant and S/A Joe O. Scott conducted surveillance of 1611 Vassar, Houston, Texas and observed a white pick-up truck with Texas Registration PA–3620 parked in the drive-way of the house. It was ascertained that only one signal from the tracking devices was being emitted. Efforts to located [sic] the signal from the second tracking device have been unsuccessful.

Because of the foregoing facts your affiant has probable cause to believe that the named premises contain glassware and laboratory equipment which either have been used or will be used in the manufacture of controlled substances signal emanating from the electronic device contained in the twelve (12) liter heating mantle in a remote area approximately six (6) miles east of Liberty, Texas.

Because of the foregoing facts, the affiant has probable cause to believe that the named premises contain glassware and laboratory equipment which either have been used or will be used in the manufacturing of controlled substances. The affiant knows of his experience and training and through consultation with a forensic chemist in the DEA Laboratory in Dallas, Texas, that some or all chemicals that may be found at the site of a clandestine laboratory pose a significant hazard because of their explosive, flammable, poisonous or otherwise toxic nature, in particular, acetic anhy ride, [sic] sodium acetate, and ether. Further, the affiant knows that the handling of clandestine laboratory chemicals without proper supervision and facilities has caused, in the past, explosions, fires and other events which have resulted in injuries and health problems. Because of these facts and facilities, the affiant requests authorization by supplemental order to dispose of these chemicals in the event of their discovery. A forensic chemist will be present at the time of execution of the

search warrant, and according to DEA guidelines, samples will be taken of all essential precursor chemicals, protogaphs [sic] will be taken of the chemicals and their containers, and the container and/or their labels will be maintained, if these containers pose no hazard. If, in the opinion of the chemist, sampling of these chemicals poses a significant risk to the assembled officers and agents, then the chemicals will be destroyed, but only after photographs have been taken and every effort will be made to maintain the original containers and/or their labels if these containers pose no hazard.

s/ John Sanchez, Jr.
John Sanchez, Jr.

SWORN TO BEFORE ME, AND SUBSCRIBED IN MY PRESENCE, This 21st day of November, 1983.

s/ Calvin Botley
UNITED STATES MAGISTRATE