UNITED STATES of America,
Plaintiff-Appellee,

v.

Gregory Keith SMITH (85–5518), Eric
Ross Helton (85–5519),
Defendants-Appellants.

Nos. 85–5518, 85–5519.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 6, 1985.

Decided Feb. 14, 1986.

Warren N. Scoville (argued), London, Ky., Lowell W. Lundy (argued), Lundy and Morris, Barbourville, Ky., for defendants-appellants.

Louis DeFalaise, U.S. Atty., Lexington, Ky., Charles L. Dause, R. Michael Murphy, Fred A. Stine, V (argued), for plaintiff-appellee.

Before LIVELY, Chief Judge, MERRITT and CONTIE, Circuit Judges.

LIVELY, Chief Judge.

This is a search and seizure case in which the defendants contend that an affidavit for a search warrant was defective and that under the circumstances of this case a search warrant for defendant Helton's "premises" did not authorize a search inside his residence. Both defendants entered conditional pleas of guilty to charges of possession of marijuana, reserving the right to appeal from the judgment for review of the district court's denial of their motion to suppress evidence seized during the search of Helton's residence. Rule 11(a)(2), Fed.R.Crim.P.

### I.

On August 21, 1984 a Kentucky State Police detective presented an affidavit for a search warrant to a state district judge. The affidavit stated that the detective had "reasonable and probable grounds to believe" that marijuana "is now on the premises known ... as Eric Helton, residence," and the location and a particular description of the Helton property were given. The basis of the affiant's belief then was set forth:

On the 20th day of August, 1984, at approximately 5:00 p.m., the affiant received information from a reliable informant that Eric Helton was producing marijuana at his residence.

Acting on the information received, affiant conducted the following independent investigation: On August 21, 1984 at 11:30 A.M. Detective William Stweart [sic] observed a marijuana plant growing beside the residence of Eric Helton.

The judge issued a search warrant for the premises as described in the affidavit and for any vehicle located on the premises. Detective Campbell, who made the affidavit, Detective Stewart, who provided the information about the growing marijuana plant, and two other state officers executed the warrant. The officers found a number of marijuana plants growing near the Helton house and, after entering the house, found a marijuana nursery in the basement. There were many plants growing in the basement, along with a mechanical device for turning lights on and off and for activating a watering system. The defendant Smith was sitting on a couch in the basement when the officers entered. The return on the warrant stated that the officers "destroyed by burning" marijuana plants having a value in excess of $75,000 growing inside and outside the Helton residence.

After pleading not guilty to an indictment charging them with manufacturing and possessing marijuana with intent to distribute, the defendants were permitted to enter conditional guilty pleas to a superseding information charging them with simple possession of one pound of marijuana.

### II.

The district court held a hearing on the defendants' motion to suppress marijuana taken from the basement of the Helton residence. Detectives Campbell and Stewart were the only witnesses. Detective Campbell testified that an informant gave him two tips concerning marijuana. The first tip related to marijuana growing in a garden, and investigation proved the information accurate. On August 20th the informant told Campbell that Helton was growing marijuana in his basement and that there was a large marijuana plant growing by the front door of Helton's house. Campbell requested Stewart to in-

vestigate and report to him. Stewart called Campbell by radio and reported that he had checked the residence and found that the "traffic" was there. "Traffic" was a prearranged code word for marijuana. Sgt. Scott of the Kentucky State Police, who went to the Helton residence with Stewart, called Campbell by telephone and said that he and Stewart had seen a large marijuana plant growing close to the front porch of the Helton home.

Detective Stewart testified that the Helton residence was in a rural area, though there were quite a few houses in the neighborhood. After locating the Helton place Stewart turned off the highway and drove up the driveway 75 or 100 yards to the Helton house. There was a wire fence along the highway, but the driveway was open and there were no obstructions between the road and the house. Stewart said that when he reached the house he saw a marijuana plant about seven feet tall and four feet in diameter at its widest point growing within a foot or two of the house.

After sighting the plant Stewart backed his pickup truck away from the house and radioed his report to Campbell. Stewart testified that he could not have seen the plant from the highway with the naked eye, but "probably" could have seen it with binoculars. Detective Campbell estimated the distance from the road to the house as 80 yards. He also testified that there were no "no trespassing" signs and no obstructions either to seeing the area where the large marijuana plant and other smaller ones were growing, or to proceeding directly up the driveway to the house.

After the hearing concluded the district court requested briefs from the parties. In denying the motion to suppress, the district court found that Smith lacked standing and that the affidavit for the search warrant was sufficient for a probable cause determination by the state judge. The district court found that the warrant permitted the officers to search the interior of the house as well as the surrounding area. The court ruled specifically that, even though the large marijuana plant was growing within the curtilage, Helton had no reasonable expectation of privacy in the driveway, and that once the officers traversed the driveway to the area near the house the marijuana plant was in "open view."

## III.

### A.

We agree with the district court that the defendant Smith was not a person aggrieved by the search and seizure in this case. This is so because he did not establish a legitimate expectation of privacy with respect to his presence in Helton's basement and he asserted no property or possessory interest in the place searched or the marijuana that was seized. The Supreme Court has made these factors determinative of whether a person is aggrieved by a search and seizure. *Rakas v. Illinois*, 439 U.S. 128, 148, 99 S.Ct. 421, 432, 58 L.Ed.2d 387 (1978). The burden of production and persuasion rests on the person seeking to suppress evidence. *United States v. Arboleda*, 633 F.2d 985, 989 (2d Cir.1980). Smith could have testified at the suppression hearing in support of his claim, but did not do so. Any testimony by Smith at that hearing could not have been admitted as evidence of guilt at the trial. *Simmons v. United States*, 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968). The fact that Smith was in possession of marijuana at the time of the search did not establish a legitimate expectation of privacy in the area searched. *United States v. Salvucci*, 448 U.S. 83, 85, 100 S.Ct. 2547, 2549, 65 L.Ed.2d 619 (1980). His presence is totally unexplained and the record discloses no facts which entitle him to object to the search.

### B.

Though sketchy, the affidavit in this case appears to satisfy the "totality of the circumstances" test established by the Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 537 (1983). The informant's tip alone would not have been sufficient. *Id.* at 227, 103 S.Ct. at

2324. However, the investigation of the tip did corroborate what Detective Campbell had been told. The informant's reliability had been established in an earlier case and Stewart's observations verified the apparent accuracy of the information concerning Helton. Our duty is to "ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Id.* at 238–39, 103 S.Ct. at 2324–25 (citation omitted). According due deference to the state judge's determination in this case, and testing and interpreting the affidavit in a "commonsense and realistic fashion," *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965), we conclude that the warrant was supported by probable cause. *United States v. Algie,* 721 F.2d 1039, 1041 (6th Cir.1983).

As noted, the informant's tip would not have been sufficient without verification. The defendants contend the verification should not have been considered because Stewart conducted an unlawful search when he drove into the Helton driveway and observed the large marijuana plant growing next to his house. Helton argues that he had a reasonable expectation of privacy in his driveway and the curtilage of his house. The Supreme Court recognized in *Oliver v. United States,* 466 U.S. 170, 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214 (1984), that the common law considered the curtilage part of the house itself and that the courts have extended Fourth Amendment protection to the curtilage. However, the curtilage is defined not merely by location, but "by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private." *Id.* (citations omitted).

When Stewart drove into the driveway there were no obstructions indicating any attempt to limit access to the area around the house. No effort had been made to screen off or enclose the area where the marijuana plants were growing. Except for the distance from the house, there was no apparent difference between the area where the large plant was observed and the cow pasture which the driveway crossed, and other open fields.

In *United States v. Ventling,* 678 F.2d 63 (8th Cir.1982), an officer drove into the driveway of a residence in a rural area. While in the driveway he observed tire tracks and parked equipment which could have been used in unlawful activities he was investigating. He photographed some of the tracks beside the driveway to compare them with tracks at the scene of the illegal activities. The photographs and observations were used in obtaining a search warrant, and the defendant filed a motion to suppress. Noting that the driveway and the area around the front porch where the observations and photographs were made were in public view, the court denied the motion. *Id.* at 66. The asserted expectation of privacy was found unreasonable under those circumstances.

The court reached a similar conclusion in *United States v. Humphries,* 636 F.2d 1172, 1179 (9th Cir.1980), *cert. denied,* 451 U.S. 988, 101 S.Ct. 2324, 68 L.Ed.2d 846 (1981), where an officer drove into a residential driveway to check the license number on a parked car. The automobile was visible from the street and the driveway was not enclosed in any way. Under these circumstances the court held that the officer's entry and identification did not violate any reasonably held expectation of privacy.

▪ Whether a driveway is protected from entry by police officers depends on the circumstances. The fact that a driveway is within the curtilage of a house is not determinative if its accessibility and visibility from a public highway rule out any reasonable expectation of privacy. *United States v. Magana,* 512 F.2d 1169, 1171 (9th Cir.1975). The factors of accessibility and visibility were also found determinative in a decision upholding surveillance of an area between a house, garage and barn on a seventy-acre tract. See *United States v. Lace,* 669 F.2d 46, 50 (2d Cir.1982).

▪ We conclude that Helton had no reasonable expectation of privacy in the area

where the large marijuana plant was observed. Though the Supreme Court recognized in *Oliver* that the Fourth Amendment protects the curtilage, as opposed to open fields, from intrusions by law enforcement officers, for this purpose the curtilage is not defined by its physical location. Instead, it exists in that area around a dwelling that is "the setting for those intimate activities that the Amendment is intended to shelter from government interference or surveillance." 104 S.Ct. at 1741. Growing large plants in a totally unobstructed and open area is not one of those "intimate activities" whose presence defines the curtilage for Fourth Amendment purposes.

The cases relied upon by the defendants do not support a different conclusion. In *United States v. Van Dyke*, 643 F.2d 992 (4th Cir.1981), decided before *Oliver*, the officers had entered areas near a residence and within an "exclusionary fence" about 150 feet from the house, where there were clear manifestations of an expectation of privacy which the court found reasonable. Not every entry on private property by police officers is a Fourth Amendment violation even if there is an encroachment upon the curtilage. *United States v. Jackson*, 585 F.2d 653, 660 (4th Cir.1978). Only if there is a reasonable expectation of privacy, as measured by the *Oliver* standard, is the Fourth Amendment implicated. We conclude that Detective Stewart and Sgt. Scott did not violate Helton's right to privacy by entering the driveway and proceeding to the area of the residence.

## IV.

■ In executing the warrant the officers entered the house and went to the basement. Detective Campbell testified that the informant told him that Helton was growing marijuana in his basement and had a big plant by the front door at his home. The only information Campbell put on the affidavit, however, was that the informant told him Eric Helton was producing marijuana at his residence. Helton makes two arguments with respect to the search of the house. First, he contends the

affidavit did not establish probable cause because it did not specify when marijuana was being grown. He asserts that since the informant said he "was" growing marijuana, this could have referred to any time in the past and did not provide probable cause to believe the plants were being grown at the time the warrant was issued. We believe this is just the sort of hypertechnical reading of an affidavit that *Ventresca* forbids. If the informant said to Campbell "is growing," Campbell, in putting the tip into an affidavit the following day would have used "was growing." Before reciting the basis of his belief, Campbell had already stated in his affidavit that he had reason to believe marijuana "is now" on the Helton premises. There is no indication that the warrant was based on stale information.

■ Helton's second contention is that the warrant did not authorize the officers to search the interior of the house. This argument overlooks the fact that the warrant commanded them to search the premises known as the Eric Helton residence, which was described as "a single story red brick dwelling and any out buildings located on said premises." The affidavit stated that Helton was "producing," not just growing, marijuana. Presumably, "producing" referred to some activity beyond growing plants. Detective Campbell testified that he saw nine or ten other marijuana plants growing in the vicinity of the house, in addition to the large plant previously reported by Detective Stewart. Under all the circumstances we conclude that the search warrant authorized the officers to enter the Helton residence and seize the marijuana that was the subject of the suppression motion. Based on the totality of circumstances known to the officers, there was at least a "fair probability" that further evidence of criminal activity would be found inside the house. *United States v. Algie*, 721 F.2d at 1041.

The judgment of the district court is affirmed.

CONTIE, Circuit Judge, dissenting.

I agree with the majority that appellant Smith lacks standing to challenge the search of appellant Helton's residence,[1] and that the entry by Officer Stewart onto Helton's driveway did not violate the Fourth Amendment.[2] However, because I believe that our Constitution requires, under the facts of this case, that the state demonstrate probable cause prior to conducting a search of a citizen's home, and that the failure to demonstrate such requires exclusion of the illegally obtained evidence, I dissent.

## I.

Consideration of informants' tips in the context of probable cause determinations was reviewed in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), where the Court rejected rigid application of the "reliability" and "basis of knowledge" prongs of the *Aguilar/Spinelli* test in favor of evaluating such tips in the "totality of the circumstances." *See United States v. Nigro*, 727 F.2d 100, 103–04 (6th Cir.1984). Under *Gates*, "a deficiency in one [element] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." 462 U.S. at 233, 103 S.Ct. at 2329. Accordingly, information from an informant with a record for reliability might be credited despite lack of evidence regarding the informant's basis of knowledge, while, likewise, a detailed tip indicating the means by which it was acquired might also be credited even in the absence of evidence of reliability. A tip's reliability may also be established through corroboration of the details of the tip by independent information. *Id.* at 241–43, 103 S.Ct. at 2333–34. That an informant is accurate with respect to the corroborated facts, makes it more likely that the informant is accurate with respect to other information communicated. *See generally United States v. Arenal*, 768 F.2d 263, 266–67 (8th Cir.1985); *United States v. Marin*, 761 F.2d 426, 430–32 (7th Cir.1985); *United States v. Strand*, 761 F.2d 449, 452 (8th Cir.1985); *Worthington v. United States*, 726 F.2d 1089, 1094 (6th Cir.1984) (Contie, J., concurring), *cert. denied*, — U.S. —, 105 S.Ct. 109, 83 L.Ed.2d 53 (1984); *United States v. Francesco*, 725 F.2d 817, 823 (1st Cir.1984); *United States v. Freitas*, 610 F.Supp. 1560, 1566 (N.D.Cal.1985).

However, "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331. Further, "probable cause requires only a probability or substantial chance of criminal activity...." *Id.* at 244 n. 13, 103 S.Ct. at 2335 n. 13. "An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause...." *Id.* at 239, 103 S.Ct. at 2332.

The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supply-

1. See also *United States v. Nabors*, 761 F.2d 465, 468 (8th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 148, 88 L.Ed.2d 123 (1985); *United States v. Adamo*, 742 F.2d 927, 947 (6th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 971, 83 L.Ed.2d 975 (1985).

2. See also *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967); *Hester v. United States*, 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924); *Boyd v. United States*, 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886); *United States v. Roberts*, 747 F.2d 537, 541–42 (9th Cir.1984); *United States v.*

*Hoskins*, 735 F.2d 1006 (6th Cir.1984); *United States v. Reed*, 733 F.2d 492, 501 (8th Cir.1984); *United States v. Jackson*, 585 F.2d 653, 659–60 (4th Cir.1978); *United States ex rel. Saiken v. Bensinger*, 546 F.2d 1292 (7th Cir.1976), *cert. denied*, 431 U.S. 930, 97 S.Ct. 2633, 53 L.Ed.2d 245 (1977); *United States v. Stroble*, 431 F.2d 1273, 1276 (6th Cir.1970); *Wattenburg v. United States*, 388 F.2d 853, 857 (9th Cir.1968); *United States v. Potts*, 297 F.2d 68, 69 (6th Cir.1961); *Care v. United States*, 231 F.2d 22, 25 (10th Cir.), *cert. denied*, 351 U.S. 932, 76 S.Ct. 788, 100 L.Ed. 1461 (1956).

ing hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. *Id.* at 238–39, 103 S.Ct. at 2332–33; *United States v. Lambert,* 771 F.2d 83, 92–93 (6th Cir.1985); *United States v. Pritchard,* 745 F.2d 1112, 1120–21 (7th Cir.1984); *United States v. Young,* 745 F.2d 733, 757–58 (2d Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985); *United States v. Savoca,* 739 F.2d 220, 224 (6th Cir.1984); *United States v. Jenkins,* 728 F.2d 396, 398 (6th Cir.1984); *United States v. Freitas,* 716 F.2d 1216, 1225 (9th Cir. 1983); *United States v. Ross,* 713 F.2d 389, 393 (8th Cir.1983).

The deference accorded the magistrate is not without limits, for "[a] sworn statement of an affiant that 'he has cause to suspect and does believe that' liquor illegally brought into the United States is located on certain premises will not do" and "[a]n officer's statement that '[a]ffiants have received reliable information from a credible person and believe' that heroin is stored in a home, is likewise inadequate." 462 U.S. at 239, 103 S.Ct. at 2332.

Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others. In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued.

*Id.* However, "[e]ven if the warrant application was supported by more than a 'bare bones' affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable cause determination reflected an improper analysis of the totality of the circumstances." *United States v. Leon,* — U.S. —, 104 S.Ct. 3405, 3417,

82 L.Ed.2d 677 (1984). *See United States v. Loggins,* 777 F.2d 336, 338 (6th Cir.1985); *United States v. Stanert,* 762 F.2d 775, 782 (9th Cir.1985), *modified,* 769 F.2d 1410 (9th Cir.1985); *United States v. Settegast,* 755 F.2d 1117, 1121 (5th Cir.1985); *United States v. Marsh,* 747 F.2d 7, 11 (1st Cir. 1984).

The Fourth Amendment requires that there "be enough evidence reasonably to believe that evidence of illegal activity will be present at the specific time and place of the search." *United States v. Thomas,* 757 F.2d 1359, 1367 (2d Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 66, 67, 88 L.Ed.2d 54 (1985). "[T]he nexus between the place to be searched and the evidence sought may be established through normal inferences about the location of the evidence." *United States v. Gant,* 759 F.2d 484, 488 (5th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 149, 88 L.Ed.2d 123 (1985). Further, "[i]n reviewing the validity of a search warrant, a court is limited to the information and circumstances contained within the four corners of the underlying affidavit." *Stanert,* 762 F.2d at 778.

In this case, the affidavit read *in full:*

On the 20th day of August, 1984, at approximately 5:00 p.m., affiant received information from a reliable informant that Eric Helton was producing marijuana at his residence.

On August 21, 1984 at 11:30 a.m. Detective William Stewart observed a marijuana plant growing beside the residence of Eric Helton.

The district court rejected Helton's challenge to the sufficiency of the affidavit.

Here the information received from the informant ... was not as precise as it should have been both in regard to the time when Helton was producing marijuana and as to being more specific to support the reliability of the informant. However, such information was corroborated and verified by the independent investigation of Detective Stewart. The investigation disclosed that the informant's information was accurate and reliable and that Helton was in fact at the

time of the date of affidavit producing marijuana at his residence.

The court concluded that "on the face of the affidavit the magistrate could reasonably find that there was probable cause to search the Helton premises including the inside of the residence with the 'fair probability' that contraband would be found by the search." On appeal, appellant contends that (1) there was no indication of the timeliness of the informant's information, (2) there was no probable cause to search inside the home, and (3) the affidavit failed to indicate why the informant was reliable.

This court has clearly stated that "probable cause existing at some time in the past will not suffice for the issuance of a search warrant." *United States v. Rosenbarger*, 536 F.2d 715, 719 (6th Cir.1976), *cert. denied*, 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1977). *See Sgro v. United States*, 287 U.S. 206, 210, 53 S.Ct. 138, 140, 77 L.Ed. 260 (1932) ("it is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.") The affidavit in this case fails to indicate when the informant learned of Helton's alleged production or when such production had or was taking place. While the affidavit's failure to indicate the time frame within which the tip is applicable may not alone preclude a finding of probable cause, when considered in the totality of the circumstances with the affidavit's other infirmities, the absence of a time element detracts from the magistrate's probable cause conclusion.

We have recently reaffirmed that "the privacy of the home 'deserve[s] the most scrupulous protection from governmental invasion.'" *United States v. Morgan*, 743 F.2d 1158, 1168 (6th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985), *quoting United States v. Oliver*, 466 U.S. 170, 104 S.Ct. 1735, 1741, 80 L.Ed.2d 214 (1984). The affidavit in issue is incredibly vague with respect to where the police reasonably expected to find the alleged evidence in the case. The affidavit indicates that Helton was "producing" "at

his residence." The affidavit fails to indicate what "producing" or "at his residence" means. The tip does not indicate that Helton was growing marijuana in his basement, house, or yard. The tip provides no details nor the basis for the tipster's knowledge of the alleged production. The vague and broad nature of the tip, as related in the affidavit, provides no reasonable basis to believe that particular evidence is in any particular place.

The majority, while noting that "[t]he informant's tip alone would not have been sufficient," concludes that "the investigation of the tip did corroborate what Detective Campbell had been told. The informant's reliability had been established in an earlier case and Stewart's observations verified the apparent accuracy of the information concerning Helton." First, I note that "what Detective Campbell had been told" seems irrelevant since we evaluate the sufficiency of the affidavit at face value. Second, the affidavit fails to indicate how the informant's reliability had been established. Third, the tip is so vague, that it is meaningless to speak of the tip having been corroborated by Stewart's observation. Even if one might describe the tip as corroborated, the tip does not clearly indicate that marijuana was being produced *in* Helton's home, and, therefore, does not provide probable cause for a search of the house.

Finally, the affidavit gives no indication whatsoever regarding why the affiant deemed the informant in question reliable. The affidavit in this case is unlike those described in *Gates* in which a deficiency in evidence of reliability is cured by evidence regarding the basis of the informant's knowledge.

The tips furnished "nothing more than a conclusion that the defendant[s] had engaged in criminal conduct." ... They wholly lack evidence either of the basis of the informant's knowledge or of the reliability of the informants, and, therefore, fall far short of the basis required by *Gates*. The tips must, therefore, be excised from the warrant, and the re-

maining allegations must stand alone to support the probable cause determination.

*Settegast,* 755 F.2d at 1121 n. 5. In the absence of the informant's "tip," it is clear that probable cause existed, on the basis of Stewart's observation, only to search around the house, rather than inside. Accordingly, the search of the house pursuant to a warrant not supported by probable cause violated the Fourth Amendment.

## II.

The government argues, alternatively, that even if the evidence in question was obtained in violation of the Fourth Amendment, exclusion is not an appropriate remedy. The district court agreed, concluding that "[t]here is nothing in the record to indicate that the officers made any misrepresentations to the magistrate in reference to the affidavit or its contents." [3]

In *Leon,* the Court held that exclusion is inappropriate where an officer acts in objective good faith. *Id.* at 3420. "[T]he officer's reliance on the magistrate's probable cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable . . . and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." *Id.* at 3421 (footnotes omitted). "[O]ur good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at n. 23. "The objective standard we adopt, moreover, requires officers to have a reasonable knowledge of what the law prohibits." *Id.* at 3420 n. 20. The Court held, more specifically, that an officer does not act in good faith by relying on an affidavit

" 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " *Id.* at 3422, *quoting Brown v. Illinois,* 422 U.S. 590, 611, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part). In evaluating objective good faith, we consider "not only how well-established is the general legal principle involved but also how precisely the facts coincide with the cases applying that principle." *United States v. Savoca,* 761 F.2d 292, 298 n. 12 (6th Cir. 1985).[4] The burden of proof on objective good faith rests on the government. *Gant,* 759 F.2d at 487; *United States v. Hendricks,* 743 F.2d 653, 656 (9th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985). *See Leon,* 104 S.Ct. at 3422.

*Gates* and the cases cited therein establish that vague, conclusory, uncorroborated, and unreliable anonymous tips simply cannot establish probable cause. A reasonably well-trained officer should have known that there was no probable cause to search inside the house. Therefore, the evidence gathered from such search should be excluded.

For the aforementioned reasons, the judgment of the district court should be reversed.

---

**3.** The Court had made clear that the question of whether the Fourth Amendment was violated and whether exclusion is an appropriate remedy are separate questions. *Leon,* 104 S.Ct. at 3412; *Strand,* 761 F.2d at 455. Likewise, the Court has held that the sequence of the inquiries depends on "the exigencies of particular cases" and is entrusted to the court's discretion. *Leon,* 104 S.Ct. at 3422–23.

**4.** That the officer may have convinced the magistrate, district judge, or members of the appellate panel that probable cause existed to support the warrant does not establish the officer's objective good faith. *But see Leon,* 104 S.Ct. at 3423. Such an analysis would give the magistrate the last word on the exclusion question.